DOWDY v MOTORLAND INSURANCE COMPANY

Docket No. 45195. Submitted March 5, 1980, at Detroit.—Decided
    April 24, 1980.

   Kenneth L. Dowdy (plaintiff) and Margaret Dowdy brought an
   action in Wayne Circuit Court against Motorland Insurance
   Company (Motorland) and Detroit Steel Products Company for
   damages for injuries suffered while in the course of his employ-
   ment with Artim Trucking Company. Motorland was the no-
   fault insurance carrier for plaintiff's private automobile. The
   parties' stipulated facts reveal that plaintiff and two other
   truck drivers from Artim Trucking drove flat bed trucks from
   Indianapolis to Louisville, Kentucky, where they each picked
   up approximately 10 or 11 bundles of bar stock, weighing
   between 5,700 and 6,000 pounds. They left Louisville, driving in
   caravan style, and drove to the premises of the Detroit Steel
   Products Company located in Morristown, Indiana. Upon ar-
   rival it was the responsibility of the drivers to untie the chains
   and other devices used to secure the bundles to the trailers.
   Thereafter, the employees of Detroit Steel Products unloaded
   the steel bundles and stacked them in pyramid fashion, about
   two feet high, on the warehouse floor in close proximity to the
   unloading area. Pieces of wood were used as spacers between
   the bundles stacked on the floor. Plaintiff was the last to
   unload. He backed his truck into the unloading area, walked to
   the rear wheels on the driver's side of the tractor and pro-
   ceeded to unfasten the tie chains used to secure the steel
   bundles. At this time, a bundle of steel which had previously
   been unloaded from another truck fell from the stacks, pinning
   the plaintiff's left leg against the left rear wheel of the tractor.
   The accident caused a severe fracture of plaintiff's left ankle.
   Both plaintiff and Motorland moved for summary judgment.
   The court, Roman S. Gribbs, J., granted summary judgment for

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d (Rev), Automobile Insurance §§ 351, 354, 355.
   Validity and construction of "no-fault" automobile insurance plans.
      42 ALR3d 229.
   What constitutes a "motor vehicle" covered under no fault insur-
      ance. 60 ALR3d 651.

Motorland, holding that the injury did not arise out of the ownership, maintenance or use of a parked vehicle. The Dowdys appeal. *Held:*

1. A section of the no-fault automobile insurance act which provides in part that no-fault insurers are liable for paying certain claims arising from accidents involving parked motor vehicles where "the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or being lowered from the parked vehicle in the loading or unloading process. Plaintiff's injuries did not result from physical contact with property being lifted onto or lowered from the parked vehicle in the loading or unloading process.

2. There must be a causal connection between the injury suffered and the ownership, maintenance or use of the automobile to sustain a claim under the terms of an automobile insurance policy which provides coverage for injuries arising out of the ownership, maintenance or use of an automobile; the causal connection must be more than incidental, fortuitous or "but for", and the injury must be foreseeably identifiable with the normal use, maintenance or ownership of the vehicle. There was no causal connection between plaintiff's injuries and the ownership, maintenance or use of the parked vehicle.

Affirmed.

1. INSURANCE — NO-FAULT — COMPENSABLE INJURIES — PARKED
VEHICLES — EQUIPMENT ON VEHICLE — STATUTES.

A section of the no-fault automobile insurance act which provides in part that no-fault insurers are liable for paying certain claims arising from accidents involving *parked* motor vehicles where "the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process" makes compensable injuries which are a direct result of physical contact with property being lifted onto or being lowered from the parked vehicle in the loading or unloading process (MCL 500.3106[b]; MSA 24.13106[b]).

2. AUTOMOBILES — INSURANCE — "OWNERSHIP, MAINTENANCE, USE".

There must be a causal connection between the injury suffered and the ownership, maintenance or use of the automobile to sustain a claim under the terms of an automobile insurance policy which provides coverage for injuries arising out of the

ownership, maintenance or use of an automobile; the causal connection must be more than incidental, fortuitous or "but for", and the injury must be foreseeably identifiable with the normal use, maintenance or ownership of the vehicle.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Michael L. Pitt*), for plaintiffs.

*Dickinson, Pike, Mourad, Brandt & Hanlon* (by *James H. Schoolmaster*), and *Gromek, Bendure & Thomas*, for defendants.

Before: D. E. HOLBROOK, JR., P.J., and R. M. MAHER and J. H. GILLIS, JJ.

PER CURIAM. This appeal arises from an action by plaintiff Kenneth L. Dowdy to recover no-fault benefits for injuries sustained on January 11, 1978, while he was in the course of employment with Artim Trucking Company. The defendant, Motorland Insurance Company (hereinafter Motorland) is the no-fault insurance carrier for plaintiff's private automobile.

The parties' stipulated facts reveal that the plaintiff and two other truck drivers from Artim Trucking left Indianapolis on the morning of January 11, 1978. All three were driving flat bed trucks from Indianapolis to Louisville, where they each picked up approximately 10 or 11 bundles of bar stock, weighing between 5,700 and 6,000 pounds. They left Louisville, Kentucky, driving in caravan style, and drove to the premises of the Detroit Steel Products Company, located in Morristown, Indiana.

Upon arrival, Patrick Bolte, one of the other drivers who accompanied the plaintiff, was the first to unload. It was the responsibility of the drivers to untie the chains and other devices used to secure the bundles to 'the flat bed trailers.

Thereafter, the employees of Detroit Steel Products unloaded the steel bundles and stacked them in pyramid fashion, about two feet high, on the warehouse floor in close proximity to the unloading area. Pieces of wood were used as spacers between the bundles stacked on the floor.

The plaintiff was the last to unload. He backed his truck into the unloading area, walked to the rear wheels of the tractor on the driver's side and proceeded to unfasten the tie chains used to secure the steel bundles. At this time, a bundle of steel which had previously been unloaded from another truck fell from the stacks, pinning the plaintiff's left leg against the left rear wheel of the tractor. The accident caused a severe fracture of plaintiff's left ankle.

On November 17, 1978, plaintiff and defendant argued their motions for summary judgment before the Wayne County Circuit Court. The trial court, by an order issued May 2, 1979, granted summary judgment to Motorland based on a finding that the plaintiff did not sustain a bodily injury arising out of the ownership, maintenance or use of a parked vehicle within the meaning of the Michigan no-fault statute. From this order, the plaintiff appeals as of right.

On appeal, we are asked to decide whether the trial court erred in granting summary judgment in favor of the defendant because the plaintiff's injury did arise from the ownership, operation, maintenance or use of a parked motor vehicle.

MCL 500.3105(1); MSA 24.13105(1) provides that:

"Under personal protection insurance an insurer is liable to pay benefits for *accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provision of this chapter."* (Emphasis supplied.)

MCL 500.3106; MSA 24.13106 deals specifically with injuries which involve a parked vehicle:

"*Accidental bodily injury does not arise out of the ownership, operation, maintenance or use of a parked vehicle as a motor vehicle unless any of the following occur:*

"(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

"(b) The injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

"(c) The injury was sustained by a person while occupying, entering into or alighting from the vehicle." (Emphasis supplied.)

In order to recover no-fault benefits, the plaintiff must first fit himself within one of the three categories of § 3106. Clearly subsection (a) is not applicable to the facts of this case. The plaintiff claims that subsection (b) applies to his situation. This subsection was interpreted in *Dembinski v Aetna Casualty & Surety Co,* 76 Mich App 181; 256 NW2d 69 (1977), where the plaintiff was carrying a ceramic mold which he was about to load onto his truck, slipped in a puddle of water, fell and injured his back. The Court found that the loading process consists only of the lifting of property into the vehicle. Since Dembinski was merely preparing to load the truck, he was excluded from coverage under § 3106(b). The Court said further that summary judgment was appropriate, since there was no dispute as to what occurred but only as to the question of law: whether what occurred came within the insurance coverage of loading.

Another case which interprets § 3106(b) is *Arnold v Auto-Owners Ins Co,* 84 Mich App 75; 269

NW2d 311 (1978). In *Arnold,* the plaintiff ruptured a disc in his back while he was lifting a ramp onto the upper deck of his employer's truck. The defendant insurance company contended that the injury was not compensable under § 3106(b) because it was not caused by physical contact with equipment permanently mounted on the vehicle. The Court, based on *Dembinski, supra,* concluded that § 3106(b) also makes compensable injuries which are a direct result of physical contact with property being lifted onto or lowered from the parked vehicle in the loading or unloading process.

Under the undisputed facts of the instant case, the plaintiff was not injured due to contact with any equipment permanently affixed to the vehicle, nor was the injury due to contact with property which was being lifted onto or lowered from the vehicle in the loading process. We therefore find that § 3106(b) does not apply to the plaintiff and does not entitle him to a recovery under no-fault.

We next examine § 3106(c) to determine its propriety for the factual situation under consideration, *i.e.,* whether the plaintiff was an "occupant" of the vehicle, or "entering or alighting" from the vehicle at the time of his injury. In *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324; 224 NW2d 896 (1975), the plaintiff was a passenger of a car which stalled in the middle of the road. The occupants pushed the car to the side of the road and then flagged down a passing motorist for assistance. The plaintiff walked to the front of the stalled car while the assisting car was turning around to come back and render aid. At this time, a third vehicle struck the stalled car from behind, pushing it into the plaintiff Nickerson, who was severely injured. The Michigan Supreme Court concluded that strict physical contact was not

imperative to a recovery. Nickerson had immediately prior to the injury been "occupying" the insured vehicle, and his subsequent injury arose out of the use or repair of the same vehicle, so he was an "occupant" of the insured vehicle and therefore within the scope of coverage.

The term "occupying" has thus been broadly interpreted by the Michigan courts to include persons who are not actually inside the vehicle at the time of injury. In *Ottenwess v Hawkeye Security Ins Co,* 84 Mich App 292; 269 NW2d 570 (1978), the decedent was deemed an occupant of his employer's dumptruck where he was fatally injured while "standing on or next to" the dump box while examining or attempting to repair a malfunction in the dumping mechanism. In *Hathcox v Liberty Mutual Ins Co,* 90 Mich App 511; 282 NW2d 374 (1979), the plaintiff was loading new automobiles onto his employer's truck-trailer. After driving one of these automobiles to the top deck and leaving the car, the plaintiff slipped on the snow-covered deck and fell, suffering neck and back injuries. The Court reasoned thusly, 90 Mich App 511, 517:

"Here, plaintiff was engaged in the operation of loading his employer's truck-trailer with automobiles; in doing so, he was obliged to repeatedly return to the truck's cab in order to readjust the accelerator in conjunction with the operation of the hydraulic pump system; further, he fell down immediately after having driven an automobile onto the deck of the trailer. As in *Nickerson,* plaintiff was actually inside of the insured vehicle's cab at various times during the automobile loading process and his subsequent injury arose out of his use of the truck and its trailer. We find, therefore, that plaintiff was an "occupant" of that vehicle within the meaning of MCL 500.3114(3); MSA 24.13114(3)."

These cases adhere to the maxim laid down in *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975), as follows:

"In summary, we conclude that *while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for.* The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle. We do not find such a causal connection in this case. The injury did not occur in the vehicle or while it was in motion. Assaults and fisticuffs are not normal foreseeable occurrences in the use of a vehicle. The fact that the automobile came upon the pedestrian was purely fortuitous and incidental. The use of the vehicle had no connection with the unexpected subsequent altercation between the passenger Giddises and the pedestrian. Viewing the incident in its entirety, we find that the injury did not arise out of the ownership, use and operation of the automobile as those terms are used within the policy." (Emphasis added.)

Thus, in both *Nickerson* and *Ottenwess, supra,* the injuries resulted from efforts to repair or "maintain" the vehicle. In *Hathcox, supra,* the injury occurred as a result of loading the vehicle. The "causal connection" requirement has been repeated in various cases, *e.g., O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526; 280 NW2d 583 (1979), concluding that a gunshot during a holdup of the plaintiff who was sitting in a parked vehicle was not compensable under no-fault because the automobile was not the instrumentality of the injury and plaintiff's occupancy of the car was a fortuity in no way connected to the assault. Again, in *Hamka v Automobile Club of Michigan,* 89 Mich App 644; 280 NW2d 512 (1979),

the Court concluded that there was no causal connection where plaintiff was punched in the nose while sitting in his parked car, as the assault did not arise out of the ownership, operation, maintenance, or use of the vehicle.

It is apparent that those cases which involved "occupants" of parked vehicles, *e.g., Nickerson, Ottenwess* and *Hathcox, supra,* used a two-tiered analytical approach in reaching their conclusions: first, § 3106 was found applicable to the facts of the case; then, a causal connection was established between the ownership, operation, maintenance or use of the vehicle and the subsequent injury. This rule was later specifically formulated in *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307; 282 NW2d 301 (1979). In that case, the plaintiff was engaged in "shining" deer when he stopped the car and got out to shoot at an animal. He then sought to reenter the car, and handed his shotgun to one of the passengers. Either in the process of handing in the gun or immediately thereafter, the shotgun accidentally discharged, fatally wounding Shinabarger. The Court said, 90 Mich App 307, 314-315:

"Section 3106, which establishes criteria for accidents involving parked vehicles, does not abrogate the need for a causal connection between the automobile and the injury. As the wording of the section makes clear, it establishes only minimum criteria for accidents involving parked vehicles. Under § 3106, no injury involving a parked vehicle may be compensated for unless one of the criteria therein is met; however, fulfillment of the requirements of § 3106 does not automatically result in liability. Even after the threshold of § 3106 is crossed, it must still be established that the injury arose out of the ownership, operation, maintenance or use of the motor vehicle.

"Although the parties in the case at bar agreed that

the motor vehicle was the site of the injury suffered by Shinabarger, there was no stipulation that the use of the vehicle was a cause of the accident. Indeed, there is nothing in the record before us to indicate what caused the shotgun to discharge. Because the record does not establish a causal connection between use of the vehicle and the injury, the trial court erred in finding liability as a matter of law.

"Plaintiffs argue on appeal that the injury to Gary Shinabarger occurred during the loading process, that loading is use of a motor vehicle as a motor vehicle, and that plaintiffs are therefore entitled to benefits. We agree that loading is use of a motor vehicle, especially so where there exists a separate loading clause in the policy description of coverage. * * * The requirement of a causal connection between the loading process and the injury, however, remains."

The plaintiff relies primarily on the decision in *McPherson v Auto-Owners Ins Co,* 90 Mich App 215; 282 NW2d 289 (1979). In *McPherson,* the plaintiff had parked her automobile and while in the process of walking around it in order to remove her three-year-old grandson from the back seat, she slipped and fell on an obstruction in the highway, causing an injury. The Court, basing its decision on *Nickerson, supra,* stated that the automobile need not be the cause of the injury, it is sufficient if it "provides the occasion" for the injury, and concluded that the plaintiff was entitled to recover no-fault benefits. We think this case is wrongly decided, for the "occasion of the injury" test would allow recovery where the vehicle fortuitously provides the setting for the injury. We agree with Judge GILLIS in his dissent to *McPherson,* where he says, 90 Mich App 215, 222:

"Even where a person is occupying, entering into or alighting from a vehicle, it must still be shown that there is a causal relationship between the injury and

the ownership, use, or maintenance of the vehicle. In the instant case while it may be true that but for her use of the car plaintiff would not have slipped, as previously noted this is not the proper test to apply. The trial court held there was no causal connection between her use of the automobile and the fact that she fell in the snow and I agree with that determination."

In the instant case, there was no causal connection between the plaintiff's injury and the ownership, operation, maintenance or use of his vehicle. It is undisputed that the injury occurred when a wooden support collapsed, allowing a bundle of steel to roll away and injure the plaintiff while he was standing near his vehicle in preparation to its unloading. We find, as a matter of law, that plaintiff's injury did not arise out of the ownership, operation, maintenance or use of a motor vehicle and the trial court did not err in granting summary judgment to the defendant.

Affirmed.