JONES v TRONEX CHEMICAL CORPORATION

Docket No. 62580. Submitted June 28, 1983, at Detroit.—Decided
    September 27, 1983.
        Pledge Jones was injured when a City of Detroit bus drove
        through a puddle of slush, water, and ice, splashing some of the
        mixture in Jones's eye. Lye was also mixed with the slush,
        water, and ice as the result of a chemical spill which had
        occurred when a tanker trailer was being used at Tronex
        Chemical Corporation to mix a load of sodium hydroxide and
        other chemicals into lye. The link-up between the tanker
        trailer and the Tronex plant broke down, spilling lye into the
        Tronex parking lot. The trailer was removed and the lye was
        flushed from the parking lot by spraying it with water. The lye
        solution flowed from the Tronex parking lot, down various
        alleys and streets, and puddled in front of the bus stop where
        Jones was standing when injured. Jones and his wife, Kathleen
        Jones, filed suit against Tronex Chemical Corporation; the City
        of Detroit, Department of Transportation, a self-insurer; and
        Carriers Insurance Company, the insurer of the tanker trailer,
        in Wayne Circuit Court, seeking recovery of no-fault insurance
        benefits. Plaintiffs moved for summary judgment against De-
        troit, and Carriers moved for summary judgment in its favor
        against plaintiffs. The court, Charles S. Farmer, J., granted
        summary judgment in favor of both plaintiffs and Carriers and
        against Detroit. Detroit appeals. *Held:*
            1. Detroit's contention that the eye injury did not arise out of
        its use of the bus as a motor vehicle is rejected. The eye injury
        arose out of Detroit's use of a bus as a motor vehicle, and it is
        eminently foreseeable that a bus, upon encountering a pool of
        water, may propel that water and whatever may be mixed with
        it in the direction of nearby pedestrians. The likelihood that
        the puddle of water contains a caustic chemical is simply not

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 7 Am Jur 2d, Automobile Insurance §§ 194, 351.
[3] 7 Am Jur 2d, Automobile Insurance § 198.
[4] 7 Am Jur 2d, Automobile Insurance §§ 114, 353.
    What constitutes "trailer" within coverage or exclusion provision of
        automobile liability policy. 65 ALR3d 804.

relevant. It is the manner in which the injury occurs that must be foreseeably identifiable with the normal use of the vehicle, not the quality of the injury. A causal nexus between the use of the bus and the injury existed. Pledge Jones's injury directly resulted from the force of the bus as it was being operated in a normal fashion as a motor vehicle. Summary judgment in favor of plaintiffs and against Detroit is affirmed.

2. Summary judgment was properly granted to defendant Carriers Insurance Company. In order to have a valid claim against Carriers, plaintiff would have to show not only that Pledge Jones was injured somehow during the loading or unloading process, but also that the tanker was at the time a parked motor vehicle operated, maintained or used as a motor vehicle. The tanker was certainly a motor vehicle but Pledge Jones was not injured during the loading or unloading process. The insured vehicle had completed its operation and had left the scene prior to Pledge Jones's injury.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — PERSONAL INJURY PROTECTION.

The phrase "arising out of" the use of a motor vehicle as a motor vehicle, as the phrase is used in the personal injury protection provision of the no-fault automobile insurance statute, does not necessitate a finding that an injury was directly and proximately caused by the use of a vehicle; conversely, it cannot be extended to something distinctly remote (MCL 500.3105; MSA 24.13105).

2. INSURANCE — AUTOMOBILES — PERSONAL INJURY — NO-FAULT INSURANCE.

There must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile to sustain a claim under the terms of an automobile insurance policy which provides coverage for injuries arising out of the ownership, maintenance or use of an automobile, the causal connection must be more than incidental, fortuitous or "but for", and the injury must be foreseeably identifiable with the normal use, maintenance or ownership of the vehicle.

3. INSURANCE — AUTOMOBILES — PERSONAL INJURY — USE OF MOTOR VEHICLE.

A person injured when a bus drove through a pool of water, slush, ice and lye, splashing some of the caustic solution into his eye, was entitled to recover no-fault insurance benefits from the self-insured owner of the bus where the injury arose out of

the use of the bus as a motor vehicle; the fact that the bus, upon encountering a pool of water, could propel the water and whatever might be mixed with it in the direction of pedestrians was eminently foreseeable and there was a causal nexus between the use of the bus and the injury.

4. INSURANCE — NO-FAULT INSURANCE — SEMI-TRAILERS.

A truck semi-trailer, whether attached to a cab or freestanding, is a motor vehicle within the meaning of the provisions of the automobile no-fault insurance act, unless it can be shown that the semi-trailer is no longer designed for use on a public highway (MCL 500.3101[2][c]; MSA 24.13101[2][c]).

*Coticchio, Zotter & Sullivan, P.C.* (by *Gary W. Parker),* for plaintiff.

*Maureen Smith,* Assistant Corporation Counsel, City of Detroit, for City of Detroit, Department of Transportation, appellant.

*Romain, Donofrio & Kuck, P.C.* (by *Pat M. Donofrio),* for Carriers Insurance Company, appellee.

Before: CYNAR, P.J., and HOOD and R. J. JASON,* JJ.

PER CURIAM. Defendant City of Detroit (Detroit) appeals from two circuit court orders of summary judgment entered against it. The orders relieved codefendant Carriers Insurance Company (Carriers) of liability to plaintiffs and entered judgment in plaintiffs' favor against Detroit.

On December 4, 1979, a tanker trailer connected to a truck owned by Michigan Transportation Company, Carriers' insured, was in the parking lot of Tronex Chemical Company in Detroit. Tronex is in the business of compounding liquid detergents. The truck which Carriers insured had brought 4,000 gallons of sodium hydroxide. A hose was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

connected between the truck and the Tronex plant. Two hundred and twenty gallons of sodium hydroxide were pumped out, 220 gallons of sodium gluconate and liquid detergents were pumped in, and the whole concoction was mixed by circulation through the hoses between the chemical plant and the tanker. Lye was the intended product of this process.

Unfortunately, the link-up broke down and a good deal of the lye spilled out onto the Tronex parking lot. The system was shut down and the tanker was driven away. Tronex employees began to flush the lye from the parking lot into an alley by spraying the lot with water. The lye flowed through the alley to Linwood Street, along Linwood to Fenkell Avenue, then along Fenkell into a pool by a bus stop. Pledge Jones was standing at the bus stop when a City of Detroit bus pulled up. It splashed slush, water, ice and lye onto him, and into his eye, causing significant damage. Plaintiffs, Pledge Jones and his wife, Kathleen Jones, sued and brought a motion for summary judgment against Detroit. Carriers also sought summary judgment.

On the original presentation of the motions, the court determined that summary judgment should be granted against both defendants in plaintiffs' favor. However, the trial court granted a motion for rehearing before any order had been entered. It then issued a new opinion, in which summary judgment was approved in favor of both plaintiffs and defendant Carriers and against Detroit.

Liability for no-fault personal protection benefits is governed by MCL 500.3105; MSA 24.13105:

"Sec. 3105. (1) Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, mainte-

nance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter."

Detroit contends that the eye injury did not arise out of its use of the bus as a motor vehicle. We believe that it clearly did.

"The term 'arising out of' does not necessitate a finding that the injury was directly and proximately caused by the use of the vehicle. On the other hand, it cannot be extended to something distinctly remote. Each case depends on its own facts. *Williams v Citizens Mutual Ins Co of America,* 94 Mich App 762, 764-765; 290 NW2d 76 (1980)." *Smith v Community Service Ins Co,* 114 Mich App 431, 433; 319 NW2d 358 (1982).

A frequently quoted statement of the standard for determining whether an injury arose out of the use of a motor vehicle is found in *DAIIE v Higginbotham,* 95 Mich App 213, 222; 290 NW2d 414 (1980), *lv den* 409 Mich 919 (1980):

"Cases construing the phrase 'arising out of the * * * use of a motor vehicle' uniformly require that the injured person establish a causal connection between the use of the motor vehicle and the injury. See Anno: *Automobile liability insurance: what are accidents or injuries 'arising out of the ownership, maintenance, or use' of insured vehicle,* 89 ALR2d 150. Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle. *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975)."

Detroit's argument focuses on the foreseeability of an eye injury arising out of the use of the bus as a motor vehicle.

We find it eminently foreseeable that a bus, upon encountering a pool of water, may propel that water and whatever may be mixed with it in

the direction of nearby pedestrians. The likelihood that the puddle of water would contain a caustic chemical is simply not relevant to this inquiry. It is the manner in which injury occurs that must be "foreseeably identifiable with the normal use of the vehicle", not the quality of the injury.

In this regard, *Gajewski v Auto-Owners Ins Co,* 112 Mich App 59; 314 NW2d 799 (1981), *rev'd* 414 Mich 968 (1982), is analytically helpful. Gajewski was injured when a dynamite bomb connected to the ignition of his car exploded as he turned the key. The Court of Appeals ruled that the injury was not covered by the no-fault act, holding that the fact that Gajewski was injured in his car was a "mere fortuity". It was not Gajewski's act of trying to start the car that injured him, but the connection of the explosive device. The Court held that injury by explosive device is not "foreseeably identifiable with the normal use, maintenance, and ownership of the vehicle". *Gajewski, supra,* p 62.

The Supreme Court reversed *Gajewski* in an order adopting the dissent of Judge CYNAR. That opinion reads in full as follows:

"CYNAR, J. *(dissenting).* I agree with the trial court that there was a sufficient causal relationship between plaintiff's use of the vehicle and his injuries. This case is distinguishable from the cases in which benefits were denied because the plaintiff's presence in the vehicle at the time of the injury was a mere fortuity. See, *e.g., Detroit Automobile Inter-Ins Exchange v Higginbotham,* 95 Mich App 213; 290 NW2d 414 (1980) (the insured's husband forced her to the curb, trapped her in her car, and shot her several times with a revolver), *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1; 235 NW2d 42 (1975) (passengers of the insured's vehicle assaulted a pedestrian), *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526; 280 NW2d 583 (1979) (the insured was shot by an assailant while she

was sitting in her vehicle). In these cases, the injury could have resulted whether the plaintiff was using the vehicle or not. The vehicle was more than merely the site of the injury. Under the facts in this case, turning the ignition key must be identified with the normal manner of starting a vehicle. There was a direct causal relationship between the use of the motor vehicle and plaintiff's injuries." *Gajewski, supra,* pp 62-63. See, also, *Smith v Community Service Ins Co,* 114 Mich App 431; 319 NW2d 358 (1982).

Just as an ample causal nexus between the use of a vehicle and an injury was supplied in *Gajewski* by the turning of an ignition key, it is extant here in the splashing of water by Detroit's bus. That the actual character of the resulting injury was bizarre or unexpected is not dispositive. Pledge Jones's injury resulted directly from the force of the bus as it was being operated in a normal fashion as a motor vehicle. The fact that the bus itself did not strike him does not bar his claim. *Bromley v Citizens Ins Co of America,* 113 Mich App 131, 135; 317 NW2d 318 (1982). Summary judgment in favor of plaintiffs and against Detroit is therefore affirmed.

We now address the propriety of summary judgment in favor of Carriers, insurer of the tanker trailer. This question involves the parked vehicle provision of the no-fault act, MCL 500.3106(1)(b); MSA 24.13106(1)(b), which provides:

"Sec. 3106. (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

\*     \*     \*

"(b) \* \* \* the injury was a direct result of physical contact with the equipment permanently mounted on the vehicle, while the equipment was being operated or

used or property being lifted onto or lowered from the vehicle in the loading or unloading process."

All parties agree that the reference to loading or unloading is independent of the reference to contact with equipment permanently affixed to the motor vehicle. See *Arnold v Auto-Owners Ins Co,* 84 Mich App 75, 80; 269 NW2d 311 (1978), *lv den* 405 Mich 804 (1979). Carriers attempts to erect three lines of defense for its position that summary judgment was appropriately granted in its favor.

The first starts with the valid point that, in order to make a claim under this section, plaintiffs would have to show not only that the injury occurred somehow during the loading or unloading process, but also that the tanker was at the time a parked motor vehicle operated, maintained or used as a motor vehicle. *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 314-315; 282 NW2d 301 (1979), *lv den* 407 Mich 895 (1979); *Dowdy v Motorland Ins Co,* 97 Mich App 242, 250; 293 NW2d 782 (1980). Carriers insists that the tanker was clearly *not* a motor vehicle being used as a motor vehicle at the time since it was instead being used as chemical mixing vat.

The tanker certainly was a motor vehicle since it was at least a trailer on the truck and was designed for operation on a public highway by other than muscular power. MCL 500.3101(2)(c); MSA 24.13101(2)(c); *Kelly v Inter-City Truck Lines, Inc,* 121 Mich App 208, 209-210; 328 NW2d 406 (1982). In *Kelly,* the defendant argued that a detached semi-trailer used for storage loses its status as a motor vehicle. The Court admitted it could conceive of a situation in which a trailer had been so altered it could no longer be described as "designed for operation on a public highway", but

concluded that where the trailer had just been detached from the truck that day the question was not even close. The semi-trailer was still a motor vehicle. *Kelly, supra,* p 210.

This case is substantially identical to *Kelly* on the question of whether the tanker was a motor vehicle. Not only had the tanker truck just driven up to the Tronex plant before it was hooked up, it drove away again just after the spill. Clearly it was still "designed for operation on a public highway" and thus was a motor vehicle under *Kelly.*

Carriers' next line of defense focuses on the nature of the hook-up to Tronex. Carriers asserts that the tanker never was subjected to a loading or unloading process since it was actually only mixing chemicals for Tronex rather than unloading them to Tronex. However, because the mixing process involved an exchange of chemicals between the tanker and the Tronex plant, we believe that both a loading and an unloading of materials occurred.

Carriers finally contends that the loading and unloading process was concluded long before Pledge Jones was injured. The truck had been disconnected from the hose, the valve had been shut off, and the truck driven away. Tronex employees had then begun to clean up the spill and were in the process of clean-up when Jones was splashed in the eye.

Carriers' position is supported by the cases. In *Dowdy, supra,* the plaintiff was participating in the delivery of bundles of steel rods. Other trucks had already arrived at the delivery site, unloaded their cargoes of steel, and piled them into pyramids. Plaintiff drove his truckload up to a spot next to one of the pyramids. As he was untrying his load in preparation for delivery, one of the

bundles that had already been delivered rolled off the pile and pinned the plaintiff's leg to his truck, causing serious injury. The Court held that plaintiff's employer's no-fault carrier was not liable since the steel that had hurt the plaintiff had already been completely unloaded and was not in the process of being unloaded when the injury occurred.

We view *Dowdy* as controlling under the facts of this case. There is no dispute that the insured vehicle had completed its operation and left the scene prior to Pledge Jones's injury. The injury therefore was not "a direct result of physical contact with * * * property being lifted onto or lowered from the vehicle in the loading or unloading process". For this reason summary judgment was properly granted to defendant Carriers Insurance Company.

Affirmed.