CELINA MUTUAL INSURANCE COMPANY v CITIZENS
INSURANCE COMPANY

Docket No. 70835. Submitted March 15, 1984, at Detroit.—Decided
July 16, 1984.

Plaintiff, Celina Mutual Insurance Company, insured New Hudson Corporation under a general premises liability policy and a special multi-peril policy. Defendant, Citizens Insurance Company, insured New Hudson under a commercial vehicle policy. Hobert Stephens owned a tractor-trailer rig which was leased to a third party under a lease which required Stephens to transport a load of steel tubing from New Hudson's plant to an out-of-state location. The tubing was loaded onto the trailer but, because the load was not properly secured, it needed to be unloaded and reloaded. All loading and unloading was done by New Hudson employees. Stephens was standing about 60 feet from the truck when the crane operator accidentally knocked over a bundle of steel tubing which had been previously unloaded. The tubing rolled into Stephens and injured him. Stephens brought an action against New Hudson. New Hudson tendered its defense to Celina. Before trial, Celina attempted to tender its defense to Citizens, but received no response. A judgment was rendered in favor of Stephens. Celina, individually and as subrogee of New Hudson, brought an action in the Oakland Circuit Court against Citizens. The court, Hilda R. Gage, J., ruled that Citizens was primarily liable and granted judgment for plaintiff. Defendant appealed. *Held:*

1. The injury arose out of the loading and unloading process and the requisite causal connection between the vehicle and

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 7 Am Jur 2d, Automobile Insurance §§ 2, 3.
[2, 3] 7 Am Jur 2d, Automobile Insurance § 205 *et seq.*
Risks within "loading and unloading" clause of motor vehicle liability insurance policy. 6 ALR4th 686.
[3] 7 Am Jur 2d, Automobile Insurance §§ 241-244.
When is automobile furnished or available for regular use within "drive other car" coverage of automobile liability policy. 8 ALR4th 387.

the injury existed to allow recovery under the commercial vehicle policy.

2. The truck was sufficiently "loaned to" New Hudson to come within the exclusion from coverage for vehicles loaned to New Hudson in its contract with plaintiff. New Hudson had control of the truck for loading, used its own equipment in the loading process and determined where the truck would be positioned and when it would be released.

Affirmed.

1. INSURANCE — JUDICIAL CONSTRUCTION.

The language of an insurance policy should be construed strictly against the insurer.

2. INSURANCE — COMMERCIAL VEHICLE INSURANCE — LOADING OR UNLOADING — CAUSAL CONNECTION.

An injury arises out of the loading or unloading process for purposes of commercial vehicle insurance policy language where the injury was to one not engaged in the loading or unloading process and where a crane operator, in unloading and stacking bundles of property, accidentally knocked over a bundle which had been previously unloaded and stacked and which then rolled into the victim, injuring him; under such circumstances, the requisite causal connection between the vehicle and the injury exists to allow recovery.

3. INSURANCE — LOANED VEHICLE — JUDICIAL CONSTRUCTION.

A truck is sufficiently "loaned to" an insured for purposes of an exclusion from liability clause in an insurance policy where the insured had control of the truck for loading, used its own equipment in the loading process and determined where it would be positioned and when it would be released.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Wayne D. Gardner*), for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin*), for defendant.

Before: WAHLS, P.J., and BRONSON and N. J. KAUFMAN,* JJ.

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

BRONSON, J. Defendant, Citizens Insurance Company appeals as of right from an order of summary judgment granting declaratory relief to plaintiff Celina Mutual Insurance Company. Celina insured New Hudson Corporation under a general premises liability policy and a special multi-peril policy while Citizens insured New Hudson under a commercial vehicle policy. The instant indemnity action arose out of a damage judgment for Hobert Stephens against New Hudson. The circuit court ruled that Citizens was primarily liable to New Hudson under the automobile policy.

The facts are undisputed. Stephens was the owner of a tractor-trailer unit (the truck), which he leased to Ace Doran Hauling & Digging Company under a "trip lease". The trip lease required Stephens to transport a load of steel tubing from New Hudson's plant to an out-of-state destination.

The steel tubing was loaded on the evening of March 30, 1978, but Stephens was forced to return to the plant because the bundles of tubing were not properly secured. Since New Hudson's regular loading crew had left, Stephens spent the night in the cab of his truck at New Hudson's loading dock while a crew unloaded and reloaded the cargo. This process involved the operation of an overhead crane affixed to the loading dock's ceiling. After removing a bundle of tubes from Stephens' truck, the crane operator, a New Hudson employee, stacked the bundles into piles of two (double-deck) before reloading them onto the truck.

When Stephens awoke, the crew was still reloading his truck. Stephens exited from the cab, went to the washroom, and returned to the shipping desk which was about 60 feet from his parked truck and began conversing with the shipping clerk. In attempting to double-deck a pile, the

crane operator accidentally knocked a bundle off a previously stacked pile, and that bundle rolled into and injured Stephens.

Stephens sued New Hudson for negligent operation of the crane during the loading process. New Hudson tendered its defense to Celina. Before trial, Celina attempted to tender its defense to Citizens, but received no response. After trial, Celina instituted the instant indemnification action against Citizens.

Defendant Citizens raises two issues on appeal. Citizens first claims that the circuit court erred in finding it liable to New Hudson under the automobile insurance policy.

Defendant's policy provides insurance for damages to persons and property "caused by an occurrence arising out of the automobile hazards for which insurance is afforded". "Automobile hazards" is defined in the policy to include both a "non-owned automobile hazard" and a "hired automobile hazard". The policy defines a "non-owned automobile hazard" as:

"The use, including loading and unloading, by any person other than the named insured, of any non-owned private passenger automobile in the business of the named insured as stated in the Declarations, and the use in such business, by any employee of the named insured, of any non-owned automobile of the commercial type if such use of such automobile is occasional and infrequent."

The circuit court found that Stephens' injury was caused by an occurrence arising out of the loading and unloading operations being carried on by New Hudson's employees, and therefore, Citizens, under its policy, was liable for insurance coverage. We agree.

Defendant's policy unambiguously specifies that, for purposes of coverage, use of a vehicle includes loading and unloading. *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 315; 282 NW2d 301 (1979), *lv den* 407 Mich 895 (1979). "Arising out of the loading and unloading" operations, at minimum, covers injuries which would be covered under the loading exception to the parking exclusion in § 3106(b) of the no-fault act.[1] Section 3106(b) makes compensable injuries which are a direct result of physical contact with property being lifted onto or lowered from the parked vehicle in the loading or unloading process. *Arnold v Auto-Owners Ins Co,* 84 Mich App 75; 269 NW2d 311 (1978), *lv den* 405 Mich 804 (1979).[2]

*Dowdy v Motorland Ins Co,* 97 Mich App 242; 293 NW2d 782 (1980), presented a factual situation similar to the case at bar. In *Dowdy,* the plaintiff truck driver was injured when a bundle of steel,

[1] "Accidental bodily injury does not arise out of the ownership, operation, maintenance or use of a parked vehicle as a motor vehicle unless any of the following occur:

"(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

"(b) Except as provided in subsection (2), the injury was a direct result of physical contact with the equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

"(c) Except as provided in subsection (2) for an injury sustained in the course of employment while loading, unloading, or doing mechanical work on a vehicle, the injury was sustained by a person while occupying, entering into, or alighting from the vehicle." MCL 500.3106; MSA 24.13106.

[2] In Stephens's tort action against New Hudson, the circuit court found that Stephens's injuries did not "arise out of" the use of the vehicle in the loading process for purposes of the no-fault parking exclusion because Stephens was not injured while he was loading or unloading the truck. We do not express an opinion as to whether the circuit court correctly or incorrectly construed the no-fault statute. We agree with the circuit court, however, that the coverage mandated in the no-fault act does not necessarily determine the extent of coverage intended by the parties in contracting for commercial vehicle insurance.

which had been previously unloaded from another truck into stacks, collapsed. The bundles of steel were supported by pieces of wood. The Court denied recovery under § 3106(b) of the no-fault act because plaintiff was not injured due to contact with property which was being lifted onto or lowered from the vehicle in the loading process.

Using the same reasoning, this Court recently denied recovery to a plaintiff who was injured when the bale elevator frame he was using to load trees onto his truck collapsed and fell on him while he was standing at the rear of his truck. *Royston v State Farm Mutual Automobile ins Co,* 130 Mich App 602; 344 NW2d 14 (1983). The Court stated:

> "In this case, plaintiff's injuries were not caused by contact with the property being loaded—the trees. The bale elevator was never 'loaded' on the truck so that the act of wheeling the elevator away from the vehicle cannot be said to be encompassed within the 'loading process'. Instead, plaintiff was injured when the bale elevator, a piece of equipment which was never loaded onto the truck, collapsed at an unfortunate moment, outside of the normal loading process." 130 Mich App 606 (citation omitted).

The hypothetical posed in *Royston, supra,* is the factual situation at bar. Stephens's injuries were caused by contact with the property being loaded and unloaded, the steel. As in *Dowdy, supra,* plaintiff's injury was due to contact with a steel bundle which had already been unloaded and stacked; however, there is a critical distinction between *Dowdy* and the instant case. In *Dowdy,* the cause of the collapse of the bundle of steel was independent from the loading operation whereas, here, the very act of unloading knocked the bundle into Stephens. Mindful of the rule that an insurance

policy should be strictly construed against the insurer, *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324; 224 NW2d 896 (1975), we conclude that Stephens's injuries were caused by an occurrence arising out of the loading and unloading process.

Defendant argues that an insufficient causal connection existed between the truck and the injury.

"An accident, in order to be covered by the 'loading and unloading' clause, must not only have occurred during the process of loading or unloading but must also be causally connected with such act of loading or unloading. An accident is causally connected with the process of loading or unloading within the meaning of the clause only if the loading or unloading was the efficient and predominating cause of the accident and there was a connection between the accident and the use of the vehicle insured. The vehicle must have been directly connected with the work of loading or unloading or it must have been an active factor in the operation." (Footnotes omitted.) 12 Couch, Insurance (2d), § 45:126, pp 392-395.

We believe the requisite causal connection existed notwithstanding the fact that the proximate cause of the accident may have been negligent operation of the crane. See *Michigan Mutual Liability Co v Ohio Casualty Ins Co,* 123 Mich App 688, 694-695; 333 NW2d 327 (1983) (recovery allowed where employee was injured when a vehicle described as a Case Loader rolled back and pinned him against the insured vehicle which employee had been preparing to tow). Also see *Bituminous Casualty Corp v American Fidelity & Casualty Co,* 22 Ill App 2d 26; 159 NE2d 7 (1959) in which employees of plaintiff's insured were unloading an engine from a truck insured by defendant under an automobile insurance policy. The engine was

being removed by a hoist which was not connected to the truck and which was owned and operated by plaintiff's insured. Either through negligent operation or some failure of the hoist, the engine fell and injured an individual employed by the manufacturer of the engine. The Illinois Court held that the injury was covered under defendant's loading and unloading clause in the automobile insurance policy.

We further find that the instant policy does not require Stephens himself to have been involved in the loading and unloading process. See *Lowry v R H Macy & Co,* 119 NYS2d 5 (1952) (coverage extended where cabinets which had been unloaded by an employee from the insured truck fell as they were being moved on a dolly), injuring a pedestrian; *State Automobile & Casualty Underwriters, Inc v Casualty Underwriters, Inc,* 266 Minn 536; 124 NW2d 185 (1963) (coverage extended to a consignee where its employee was opening a trap door in a sidewalk as a part of the unloading process and injured a passing pedestrian).

The New Hudson employee was using the crane to unload the steel bundles from Stephens's truck and to stack them in piles preparatory to reloading the bundles onto the truck. Stephens was injured when the employee moved the crane too far and knocked a bundle off a stack and it rolled into Stephens. We conclude that Stephens's injury was caused by an occurrence arising out of the loading and unloading of the truck and was, therefore, covered by defendant's insurance policy.

Defendant also challenges the circuit court's ruling that Stephens's truck was loaned to New Hudson during the loading process within the meaning of an exclusionary clause in plaintiff Celina's premises liability and multi-peril policies.

That clause excluded coverage for injuries arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile "owned or operated by or rented or loaned" to New Hudson. As a consequence of the ruling that the exclusionary clause applied, Celina was relieved of liability and defendant was deprived of a potential claim that Celina was primarily liable for Stephens's injuries.

The meaning of the term "loaned to" is a question of first impression in this jurisdiction. Since the term was not defined in plaintiff's policy, we must construe it in accordance with its ordinary and popular meaning, so as to avoid strained interpretations. See *Cora v Patterson,* 55 Mich App 298; 222 NW2d 221 (1974), and cases cited therein.

Both parties rely on cases from other jurisdictions which have construed the term "loaned to" or "borrow" in the context of "hired automobile" clauses.[3] These cases are not strictly analogous because the analyses employed generally focus on the purposes and policies behind a hird automobile clause.[4] Even if we assume that the intent of the exclusionary clause was to relieve Celina of liability for injuries traditionally covered under an automobile insurance policy, the coverage excluded by Celina's clause would not necessarily be identical to the coverage afforded under a hired automobile clause. The "hired automobile" cases are nonetheless instructive.

The circuit court relied on *McDaniels v Great Atlantic & Pacific Tea Co,* 602 F2d 78, 81 (CA 5,

[3] See Anno: *When is automobile "used under a contract in behalf of, or loaned to," insured, within meaning of "hired automobile" provision of automobile insurance policy,* 5 ALR4th 636.

[4] See, *e.g., Bankers & Shippers Ins Co of New York v Lockamy,* 51 Md App 1, 4-6; 440 A2d 421 (1982).

1979), where the Court defined "borrower" as "one who has temporary possession of a vehicle with the permission of the owner". In applying this definition to the facts before it, the Court concluded:

"Here, there is no dispute that A & P had the permission of Gulf to use the truck for the purpose of unloading. Furthermore, we agree with the district court that A & P had temporary possession of the truck during unloading. The evidence discloses that A & P had complete control over the loading process from the time that the Gulf truck came onto A & P's premises until A & P released the truck to the driver. In speaking of the truck, McDaniels testified that he 'turned it over' to A & P to unload. A & P determined *where along the dock the truck would be unloaded,* who would unload it, what unloading equipment would be used, where the unloaded cargo would be placed on the dock, and *when to release the truck to the driver.* The sole means of unloading the truck was through the use of the electric forklift, which the A & P employee drove in and out of the truck at will. We believe that A & P's control over unloading operations show sufficient dominion and control over the truck to support the conclusion that A & P had temporary possession of Gulf's truck during the unloading." *Id.* (Emphasis in original.)

In *Bankers & Shippers Ins Co v New York v Lockamy,* 51 Md App 1; 440 A2d 421 (1982) (a case cited by defendant), the Court more narrowly construed the term "borrower". The Court stated:

"We accept the basic definitional criterion for determining who is a 'borrower'—permissive possession and use of the vehicle for the benefit of the 'borrower'—but we do not find that criterion to be satisfied merely by controlling a temporary and on-going loading or unloading operation as part of a consignor or consignee maintaining control over its loading dock." 51 Md App 15.

*Bankers* is distinguishable from the instant case because the truck driver's helper, Lockamy, was directly involved with the loading operation.

Without delineating the exact contours of the exclusionary clause, we find no error in the circuit court's finding that Stephens's truck had been "loaned to" New Hudson within the meaning of the contract clause. Stephens had no control over the loading process and in effect could not leave until the loading process was completed. Furthermore, Stephens was in no way directly involved with the loading process. New Hudson determined where the truck would be positioned and when it would be released and used its own equipment in the loading process. We conclude that, at the time Stephens's injury arose, he had voluntarily given up temporary possession and control of his truck. Accordingly, the exclusionary clause in plaintiff's policy operated to relieve plaintiff from liability.

Affirmed.