PEOPLE v PLOZAI (ON REMAND)

Docket No. 75817. Submitted January 5, 1984, at Lansing.—Decided December 18, 1984.

Anthony J. Plozai was convicted by a jury in the Roscommon Circuit Court of first-degree murder, Willard L. Mikesell, J. The Court of Appeals, in an unpublished opinion, reversed his conviction on the ground that the prosecutor had made improper and prejudicial remarks in his closing argument. The Court of Appeals, after granting the prosecutor's motion for a rehearing, then decided that its former determination was erroneous and, thus, affirmed the defendant's conviction. 50 Mich App 131 (1973). Defendant then applied for a delayed appeal, raising substantially different issues from those raised in his former appeal. The Court of Appeals granted leave to appeal and reversed defendant's conviction on the grounds that the trial court erred by giving an erroneous jury instruction on the issue of malice and that the harmless error test did not apply under the circumstances, 125 Mich App 107 (1983). The people sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, vacated the judgment of the Court of Appeals and remanded the case for reconsideration of the harmless error issue. After reconsideration, *held:*

The trial court's erroneous jury instruction on implied malice falls within the harmless error rule as set forth by the Supreme Court in two earlier cases. The defendant admitted the killing in this case, but argued that his actions were justified on the basis of self-defense. There was conflicting testimony and evidence that defendant acted intentionally in killing the decedent. Depending upon which version is believed, the element of malice was either clearly planned and intended or there was no malice at all. Implied malice was never an issue, and the

REFERENCES FOR POINTS IN HEADNOTE

40 Am Jur 2d, Homicide §§ 51, 500, 561.

Instruction as to presumption of deliberation or premeditation from the act of killing. 86 ALR2d 659.

Instructions as to presumption or deliberation and premeditation from circumstances attending killing. 96 ALR2d 1435.

erroneous implied malice instruction had no bearing on the focal point of the trial. The error was harmless.

Defendant's conviction and sentence are affirmed.

HOMICIDE — MALICE — INSTRUCTIONS TO JURY — ERROR — HARMLESS ERROR.

An instruction to the jury in a prosecution for murder that the law implies malice from an unprovoked, unjustifiable, or inexcusable killing or when a man kills another suddenly and without provocaton is erroneous; however, the error may be harmless where the defendant admits killing the victim but relies on a defense of self-defense; in this case, the implied malice instruction, though erroneous, has no bearing on the focal point of the trial, the element of malice being either clearly planned and intended or entirely nonexistent.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Thomas A. Swanson,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

*Ronald C. Meiring,* for defendant on appeal.

## ON REMAND

Before: ALLEN, P.J., and R. M. MAHER and GRIBBS, JJ.

PER CURIAM. We reconsider this case on remand pursuant to an order of the Supreme Court[1] vacating our opinion in *People v Plozai,* 125 Mich App 107; 335 NW2d 500 (1983), and remanding back to this Court "for reconsideration of the harmless error issue. *Cf. People v Woods,* 416 Mich 581, 595-601; 331 NW2d 707 (1982)".

Our opinion in *Plozai, supra,* reversed defendant's conviction by jury of first-degree murder on grounds that the trial court erred reversibly when, in instructing the jury on the element of malice, the trial court said:

---

[1] *People v Plozai,* 418 Mich 896; 341 NW2d 469 (1983).

"Possibly I can make this clearer by an illustration. If one, without just cause, inflicts a wrong upon another, we call him malicious, so when one, without any legal provocation, justification or excuse, intentionally kills another, we call him a murderer.

"The law implies, from an unprovoked, unjustifiable or inexcusable killing, the extension of that wicked disposition which the law terms malice aforethought. If a man kills another suddenly and without provocation the law implies malice and the offense is murder."

Our opinion noted that "[a]n almost identical instruction regarding" malice was found to constitute error in *People v Richardson,* 409 Mich 126; 293 NW2d 332 (1980), and further stated that "the harmless error test is also not applicable". 125 Mich App 110-111. In its order remanding, the Supreme Court asks that we address the "harmless error" issue.

We begin our reconsideration by examining the situation in *People v Woods, supra,* the case to which the Supreme Court expressly referred in its order of remand. There, defendants Woods, Tucker and McFadden were convicted of the first-degree murder of John Jenkins. The principal witness against defendants was Willie Lewis, a drug user, who testified that four days before the killing he heard Woods say that Jenkins was a snitch and "something had to be done"; that later Tucker produced a pistol and gave it to Woods who gave it to McFadden; that the scheme was to intoxicate Jenkins with drugs and then kill him; that the next morning McFadden told him (Lewis) that he had "done it". Jenkins was found dead with three bullet wounds in his body, morphine in his blood and needle marks on his arm. Medical testimony established that death was from the bullet wounds. In instructing the jury on malice the trial court gave an instruction functionally equivalent to the

instruction given in the instant case. After finding that the instruction was erroneous under *People v Richardson, supra,* the Supreme Court then said:

"Given that the instruction was erroneous, *the issue becomes whether this error was harmless.* The standard applied on appellate review is whether the error was prejudicial. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

"Under the facts of the immediate case, the defendants were not prejudiced by the erroneous instruction, for the testimony of Willie Lee Lewis, which must have been believed by the jury to find the defendants guilty as accomplices of Jerome McFadden, indicated acts of express malice. *No acts supported or allowed the implication of malice:* thus the instruction on implied malice was completely superfluous.

\* \* \*

"By the same token, all of McFadden's acts were shown to be done pursuant to a plan to intoxicate the deceased with drugs and then kill him. *Not one shred of evidence indicated that the killing by him was done pursuant to anything other than a formed design.* No one saw McFadden kill Jenkins, so there was no evidence of a sudden, unprovoked act. Consequently, malice could not have been implied by the jury along the lines suggested by the erroneous instruction." 416 Mich 597-599. (Emphasis supplied.) (Footnote omitted.)

The Supreme Court next contrasted the Woods and Tucker situation with the facts presented in *Richardson,* a case where the Supreme Court did find that the error was not harmless. Speaking to this point, the Court said:

"This may be contrasted with the situation in *Richardson* where we did find the error to be prejudicial. In that case, it was not contested that the defendant had killed the victim. The main trial issue was the defendant's intent, which was vigorously contested, since the defendant claimed the killing was an accident. In

*Woods* and *Tucker,* the issue was not intent but whether the defendants planned the killing. The instructions here had no bearing on the focal point of the trial." 416 Mich 599-600. (Footnote omitted.)

Consistent with the above language that where the killing is claimed to be an accident the instructional error is not harmless, the Supreme Court in *People v Alexander,* 416 Mich 581; 331 NW2d 707 (1982),[2] found not harmless an instruction that malice may be presumed. In so doing, the Court stressed the fact that intent to fire the gun was an issue and stressed the lack of overwhelming evidence that the defendant intended to shoot the victim. As to this latter point the Supreme Court said:

"Nevertheless, the evidence also indicates that the defendant and the victim were lovers who had lived together for quite a length of time. The defendant stated that she had retrieved the gun in order to protect herself, that the gun slipped from her hands, and that it discharged when she tried to grab it. She also testified that he called for her and asked her to get help. After her initial fright dissipated, she did seek help. Also, she was extremely upset and cried much of the time after the shooting. This evidence tends to corroborate a theory of accident. It is quite possible that in finding an intent to kill the jury inferred intent from the acts of the accused. *There is no direct or circumstantial evidence which overwhelmingly proves the requisite intent.* Thus, the constitutional error was not harmless." 416 Mich 615. (Emphasis supplied.)

The distinction between a *Woods-Tucker-* and an *Alexander-* type instructional error and the reason why the error is harmless in the former and grounds to reverse in the latter is spelled out in

[2] *People v Woods, supra,* involved three cases: *People v Woods, People v Tucker,* and *People v Alexander.* The discussion of the issues involved in *Alexander* commences at page 610 of *Woods.*

Van Hoek, *Criminal Law,* 30 Wayne L Rev 447, 450 (1983):

"The Court declined to adopt a per se rule that reversal is mandated when there are erroneous instructions on an essential element of an offense. Rather, the Court made the 'traditional' harmless error determination of whether or not any defendant was prejudiced by the erroneous charge. In *Woods* and *Tucker,* all of the trial evidence revealed that the defendants had formed a design to kill, which amounted to express malice, so that the erroneous instruction on implied malice was superfluous. In addition, and in contrast with a case involving a claim of accident, the issue in this case was not intent but whether the defendants 'planned' the killing. The implied malice instruction therefore had no bearing on the focal point of the trial. While the error was harmless in *Woods* and *Tucker,* the Court reversed the defendant's second-degree conviction in *Alexander.* Alexander's intent was disputed at trial since she claimed accident, so the burden-shifting instruction was critical and the Court could not say that it did not contribute to the verdict." (Footnotes omitted.)

With the foregoing as a background,[3] we now turn to what we perceive to be the determinative question: Is the instructional error in the case before us a *Woods-Tucker-* or an *Alexander-* type error? This in essence is what the Supreme Court has asked us to decide on remand. We begin by summarizing the testimony at trial.

William Ellixson, defendant's father-in-law, owned and operated a TV repair shop in Roscommon County near Houghton Lake. On the night of January 8, 1971, defendant drove north to the Houghton Lake area, taking his unloaded rifle with him in a box. There he broke into an unoccu-

---

[3] *Woods* applied *only* a standard harmless error test but the constitutional "harmless beyond a reasonable doubt" standard was applied to the *Alexander* error.

pied cabin. On the following day, a call came to Ellixson's TV repair shop asking Ellixson and/or his helper, Ed Brincat, to come to the cabin to fix a television set. Ellixson and Brincat couldn't find the cabin but stopped at a bar on the way back to the shop where Ellixson called his wife. Mrs. Ellixson told him the man had called again and given further instructions on where to find the cottage. Ellixson and Brincat proceeded to the cabin where they found a dimly-lit cottage with a note pinned on the front door reading "TV man, go in, I'll be right back". They entered and found a TV set playing. As Brincat approached the TV set, four shots rang out, three striking Ellixson in the pelvic area. The fourth shot, aimed from a different direction, went through Ellixson's head as he lay on the floor.

Brincat ran to the kitchen and heard a voice say "Stop, or I'll kill you". Turning, he saw defendant in the doorway holding a smoking rifle. Defendant asked Brincat if the victim (an ex-policeman) "still carried his revolver". When Brincat replied "yes", the gun was retrieved from inside the victim's pant leg. Brincat further testified that following the shooting defendant, while holding the victim's gun in his hand, took $200 from the victim's wallet, and $100 from him; that as they left the cottage defendant ordered him to "cover the son-of-a-bitch up, I can't look at him"; that he and defendant got in defendant's 1960 Chevrolet and left the cottage; that for three days defendant held him hostage; that in the cottage after the killing defendant said "I finally got him" and that he was glad he (the victim) was dead; that in a motel room defendant told him how he planned the killing since last summer and that once before defendant came to Roscommon "to kill Mr. Ellixson".

Defendant testified that he came north in order to see his son who was in the custody of his wife, who was getting a divorce; that he intended to enlist the help of Ed Brincat, who worked with defendant's father-in-law at the TV shop; that he phoned the shop and asked for Brincat to come out and fix a TV; that his father-in-law had on two or three occasions threatened to kill him if he came up to see his son; that when he saw the truck pull up with both Brincat and Ellixson in it, "Everything that I tried to avoid was happening right now"; that he loaded his rifle fearing Ellixson might carry out his threats; that as Ellixson entered the cottage and saw him, Ellixson dropped to a crouch and reached for his handgun; that in self-defense defendant pumped out four shots by reflex. Defendant's mother testified that in July she had occasion to talk with Ellixson on the phone and during the conversation Ellixson said "If Tony ever comes up north, he (Ellixson) will kill him", and she informed her son of the conversation. The jury was instructed on murder I, II, manslaughter, and self-defense. Defendant was found guilty of murder I and received a life sentence.

Based upon the foregoing review of testimony, we conclude that the instructional error falls within the harmless error rule in *Woods* and *Tucker* and is clearly distinguishable from the situation in *Richardson* and *Alexander.* In the instant case, defendant admitted that he brought the weapon and the ammunition into the cabin, acknowledged that he thought he might have to wound the deceased when he saw him approaching the cabin, and admitted that he shot the deceased four times, but argued that his actions in killing his father-in-law were justified on the basis of self-defense.

Unlike *Richardson,* where the shooting was

claimed to be unintended because it was accidental, defendant in the present case made no claim that his actions were anything but intentional. The key to the defense was that defendant's action in shooting and killing the decedent was legally excusable and justified because he acted in self-defense. Even though erroneous, the implied malice instruction given by the judge would not have supported a conviction had the jury believed the defense theory because if the killing were justified, the jury could not imply malice.

Moreover, in the case before us, there was no room for implied malice. Depending upon whether one believed Brincat's testimony and the expert evidence concerning the trajectory of the fourth bullet or alternatively believed defendant's testimony that his father-in-law was reaching for his gun and defendant fired in self-defense, the element of malice was either clearly planned and intended or there was no malice at all. Implied malice was never an issue. Thus, the implied malice instruction had no bearing on the focal point of the trial. This being so, the trial court's instruction, held to constitute error in *People v Plozai, supra,* is found harmless.

Accordingly, defendant's conviction and sentence are affirmed.