# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## KEMP v FARM BUREAU GENERAL INSURANCE COMPANY OF MICHIGAN

Docket No. 151719. Argued on application for leave to appeal October 6, 2016. Decided June 15, 2017.

Daniel Kemp filed a complaint in the Wayne Circuit Court against his no-fault insurer, Farm Bureau General Insurance Company of Michigan, seeking personal protection insurance (PIP) benefits under the parked motor vehicle exception in MCL 500.3106(1)(b) for an injury he sustained while unloading personal items from his parked motor vehicle. Farm Bureau moved for summary disposition under MCL 2.116(C)(10) on the basis that Kemp had not established any genuine issue of material fact regarding whether he satisfied MCL 500.3106. Kemp responded by asking the trial court to deny Farm Bureau's motion and, instead, to grant judgment to Kemp under MCR 2.116(I)(2). The court, Susan D. Borman, J., granted Farm Bureau's motion for summary disposition. Kemp appealed. The Court of Appeals, CAVANAGH and SAAD, JJ. (BECKERING, P.J., dissenting), affirmed the trial court's decision in an unpublished per curiam opinion issued May 5, 2015 (Docket No. 319796). Kemp sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant Kemp's application for leave to appeal or take other action. 499 Mich 861.

In an opinion by Justice VIVIANO, joined by Justices McCORMACK, BERNSTEIN, and LARSEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

Farm Bureau was not entitled to summary disposition because Kemp satisfied the transportational function requirement as a matter of law, and he created a genuine issue of material fact concerning whether he satisfied the parked vehicle exception in MCL 500.3106(1)(b) and the corresponding causation requirement. Therefore, the trial court erred by granting summary disposition in favor of defendant, and the Court of Appeals erred by affirming that decision. The conveyance of personal belongings is closely related to the transportational function of motor vehicles, and a person who is engaged in the activity of unloading his or her personal effects from a vehicle upon arrival at a destination is using the vehicle for its transportational function. *Shellenberger v Ins Co of North America*, 182 Mich App 601 (1990), was overruled to the extent it suggested otherwise.

1. The Michigan no-fault insurance act, MCL 500.3101 *et seq*., specifically MCL 500.3105(1), requires no-fault automobile insurers to pay PIP benefits to a person for injuries arising from the ownership, operation, maintenance, or use of a motor vehicle. PIP benefits are

generally not payable for injuries involving a parked motor vehicle unless the claimant can show, under MCL 500.3106(1), that one of the exceptions to the parked motor vehicle exclusion applies. One of the exceptions is addressed in MCL 500.3106(1)(b), which states, in relevant part, that an injury may qualify for no-fault benefits when the injury arises out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if the injury was a direct result of physical contact with property being lifted onto or lowered from the vehicle in the loading or unloading process. *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626 (1997), provides a three-step framework for analyzing whether a no-fault insurer must provide benefits for injuries related to parked motor vehicles: (1) the claimant must show that the circumstances of the injury fit one of the exceptions in MCL 500.3106(1); (2) the claimant must show that the injury arose from the ownership, operation, maintenance, or use of a parked motor vehicle as a motor vehicle (the transportational function requirement); and (3) the claimant must show that the injury had a causal relationship to the parked vehicle that was more than incidental, fortuitous, or but for. In this case, Kemp created a question of fact regarding whether his injury arose directly from his physical contact with property being lifted onto or lowered from the vehicle in the loading or unloading process. Kemp showed that his injury arose as he was unloading his personal items from his parked vehicle and that he was in physical contact with the items at the time of the injury. Whether plaintiff's property was of sufficient size and weight to have caused his injury was a question of fact for the jury.

2. In addition to establishing a parked vehicle exception under MCL 500.3106(1), to be eligible for PIP benefits when an injury involves a parked motor vehicle, MCL 500.3105 requires that the injury arise from the injured person's use of the motor vehicle as a motor vehicle. That is, the activity giving rise to the injury must be closely related to the vehicle's transportational function. Kemp was injured as he unloaded personal items from his vehicle after arriving at his home. The dictionary definition of the term "vehicle" is any device or contrivance for carrying or conveying persons or objects. A person who is engaged in the activity of unloading his or her personal effects from a vehicle upon arrival at a destination is using the vehicle for its transportational function, i.e., for the conveyance of persons or objects from one place to another. In reaching the opposite conclusion, the Court of Appeals relied on *Shellenberger*, which erroneously conflated transportational function with some facet particular to the normal functioning of a motor vehicle. But the correct question is whether the activity in which the plaintiff was engaged was closely related to the vehicle's transportational function. That the injury could have occurred elsewhere is of no moment. *Shellenberger* was overruled to the extent it suggested otherwise. Kemp's act of unloading items from his vehicle upon arrival at his destination constituted the use of a motor vehicle as a motor vehicle and satisfied the transportational function requirement as a matter of law.

3. To recover under MCL 500.3106(1)(b), an injured person must also show a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for. The injury must be foreseeably identifiable with the normal use of the vehicle. In this case, Kemp's injury was foreseeably identifiable as an injury that could arise from the normal use of his vehicle, and he raised a question of fact regarding whether his injury had a causal relationship to the use of a motor vehicle as a motor vehicle that was more than incidental, fortuitous, or but for.

Court of Appeals' decision affirming the trial court's grant of summary disposition in favor of Farm Bureau reversed and case remanded to the trial court for further proceedings.

Justice ZAHRA, joined by Chief Justice MARKMAN and Justice WILDER, dissenting, concluded that Kemp had failed to establish a genuine issue of material fact with regard to the parked motor vehicle exception in MCL 500.3106(1)(b) and would have granted leave to appeal to reexamine *Putkamer*. In this case, there was no evidence that Kemp's physical contact with the property caused Kemp's injury; that is, Kemp produced no evidence that the kinetic energy, weight, or other physical property of the items he was unloading caused his injury. Rather, Kemp himself testified that the injury occurred when he turned and twisted to place the items on the ground. The evidence suggested that the act of unloading the property—and not physical contact with the property—caused Kemp's injury. Simply touching property being unloaded from a vehicle does not establish that the injury occurred as a direct result of that physical contact. Further, *Putkamer* should be reexamined because there is little question that the third prong of *Putkamer*'s analytical framework cannot apply to injuries arising from parked vehicles under MCL 500.3106(1)(b), which contains its own causation requirement; the *Putkamer* test does not bear sufficient resemblance to the actual statutory text at issue.

©2017 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

FILED June 15, 2017

S T A T E   O F   M I C H I G A N

SUPREME COURT

DANIEL KEMP,

      Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

      Defendant-Appellee.

No. 151719

BEFORE THE ENTIRE BENCH

VIVIANO, J.

At issue in this case is whether plaintiff, Daniel Kemp, is entitled to personal protection insurance (PIP) benefits under the no-fault act[1] for injuries he allegedly sustained while unloading personal belongings from his parked vehicle.[2]  We hold that

---

[1] MCL 500.3101 *et seq.*

[2] As explained herein, a plaintiff seeking PIP benefits for an injury related to a parked motor vehicle must satisfy (1) one of the three exceptions set forth in MCL 500.3106(1);

plaintiff created an issue of fact regarding whether he satisfied the parked motor vehicle exception in MCL 500.3106(1)(b) and the corresponding causation requirement. We also hold as a matter of law that plaintiff satisfied the transportational function requirement. Therefore, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEEDINGS

On September 15, 2012, after plaintiff finished working, he placed his briefcase, overnight bag, thermos, and lunch box on the floor behind the driver's seat of his 2010 Chevy Silverado 1500 extended cab truck. He then drove home. When he arrived, he parked in his driveway, stepped out of the vehicle, and went to retrieve his belongings. Plaintiff opened the rear door, reached into the vehicle for his belongings, and sustained an injury as he was lowering them from the vehicle.

Subsequently, plaintiff filed suit against his auto insurer, defendant Farm Bureau General Insurance Company of Michigan, seeking no-fault benefits under § 3106(1)(b). Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was not entitled to no-fault benefits because (1) his injury did not arise out of the ownership, operation, maintenance, or use of the parked motor vehicle as a motor vehicle, (2) his injury did not meet the parked motor vehicle exception in § 3106(1)(b), and (3) his injury did not have a causal relationship to the parked motor vehicle that was

---

(2) the transportational function requirement; and (3) the causation requirement. See *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 635-636; 563 NW2d 683 (1997).

2

more than incidental, fortuitous, or but for.  In response, plaintiff asked the trial court to deny defendant's motion and to grant plaintiff judgment under MCR 2.116(I)(2).[3]  The trial court granted defendant's motion.

Plaintiff appealed, and the Court of Appeals affirmed the trial court's judgment in a split decision.[4]  The Court of Appeals majority concluded that plaintiff's "injury had nothing to do with 'the transportational function' of his truck."[5]  According to the Court, "the removal of personal effects from a parked vehicle . . . cannot be said to result from some facet particular to the normal functioning of a motor vehicle" because similar movements routinely occur in other places.[6]  Rather, the majority reasoned, plaintiff's vehicle was used as a "storage space for his personal items" and was "merely the site" of the injury.[7]

Dissenting, Judge BECKERING concluded that plaintiff had satisfied the parked motor vehicle exception set forth in § 3106(1)(b).[8]  The dissent further concluded that plaintiff had satisfied the transportational function requirement because "it is axiomatic

---

[3] MCR 2.116(I)(2) states that "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

[4] *Kemp v Farm Bureau Gen Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued May 5, 2015 (Docket No. 319796).

[5] *Id*. at 3 (citation omitted).

[6] *Id*. (quotation marks and citation omitted).

[7] *Id*.

[8] *Id*. (BECKERING, P.J., dissenting) at 1.

that when one travels in a vehicle, one will take personal effects along for the ride and will seek to unload those personal effects when the drive is finished."[9]   Finally, the dissent reasoned that "plaintiff's injury had a direct causal relationship to the parked vehicle" because it was the act of retrieving his personal effects from his vehicle that caused his injury.[10]

Plaintiff then sought review in this Court, and we ordered oral argument on plaintiff's application, directing the parties to address

> (1) whether the plaintiff's injury is closely related to the transportational function of his motor vehicle, and thus whether the plaintiff's injury arose out of the ownership, operation, maintenance, or use of his motor vehicle as a motor vehicle; and (2) whether the plaintiff's injury had a causal relationship to his parked motor vehicle that is more than incidental, fortuitous, or but for. *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 217 n 3 (1998).[11]

## II.  STANDARD OF REVIEW

We review de novo a trial court's decision to grant a motion for summary disposition under MCR 2.116(C)(10).[12]   MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."  In determining whether there is a genuine issue as

---

[9] *Id*. at 5.

[10] *Id*. at 6.

[11] *Kemp v Farm Bureau Gen Ins Co of Mich*, 499 Mich 861, 861-862 (2016).

[12] *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366; 817 NW2d 504 (2012).

4

to any material fact, we consider the evidence in the light most favorable to the nonmoving party.[13] "[W]here there is no dispute about the facts, the issue whether an injury arose out of the use of a vehicle is a legal issue for a court to decide and not a factual one for a jury."[14]

Issues of statutory interpretation are also reviewed de novo.[15] When interpreting statutes, our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language.[16] "In so doing, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme."[17] "When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written."[18]

## III. ANALYSIS

### A. LEGAL BACKGROUND

"The Michigan no-fault insurance act requires a no-fault automobile insurer to provide first-party injury protection for certain injuries related to a motor vehicle . . . ."[19]

---

[13] *Id*.

[14] *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 216 n 1; 580 NW2d 424 (1998), citing *Putkamer*, 454 Mich at 630 (alteration in original).

[15] *Madugula v Taub*, 496 Mich 685, 695; 853 NW2d 75 (2014).

[16] *Id*. at 696.

[17] *Id*.

[18] *Id.* (quotation marks and citation omitted).

[19] *Putkamer*, 454 Mich at 631.

The no-fault act's initial scope of coverage for PIP benefits is set forth in MCL 500.3105(1), which provides that under "personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." However, when an injury involves a parked motor vehicle, coverage is generally excluded unless the claimant demonstrates that one of three statutory exceptions applies.[20] Plaintiff claims that he is entitled to PIP benefits under the parked motor vehicle exception contained in the second clause of § 3106(1)(b), which provides:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:
>
> * * *
>
> (b) . . . the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, *or property being lifted onto or lowered from the vehicle in the loading or unloading process.*[21]

This Court has provided a three-step framework to analyze coverage of injuries related to parked motor vehicles.[22] First, the claimant must demonstrate that his or her "conduct fits one of the three exceptions of subsection 3106(1)."[23] Second, the claimant

---

[20] MCL 500.3106(1).

[21] Emphasis added. There is an exception to this coverage for certain injuries occurring to an employee in the course of employment if workers' compensation benefits are available to compensate for the injury. MCL 500.3106(2). The workers' compensation exception is not pertinent here.

[22] *Putkamer*, 454 Mich at 635-636; *McKenzie*, 458 Mich at 217 n 3.

[23] *Putkamer*, 454 Mich at 635.

6

must show that "the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle *as a motor vehicle*[.]"[24] Finally, the claimant must demonstrate that the "injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for."[25] We analyze each of these requirements in turn.

## B. STEP ONE: PARKED MOTOR VEHICLE EXCEPTION IN § 3106(1)(b)

We must first determine whether plaintiff's conduct falls within the parked motor vehicle exception contained in the second clause of § 3106(1)(b), which provides coverage when "the injury was a direct result of physical contact with . . . property being lifted onto or lowered from the vehicle in the loading or unloading process."[26]

In this case, plaintiff established a question of fact concerning whether he was injured as he lowered his briefcase, overnight bag, thermos, and lunch box (all of which

---

[24] *Id*. at 635-636 (emphasis added).

[25] *Id*. at 636.

[26] MCL 500.3106(1)(b). For the first time in its supplemental brief to this Court, defendant argues that the two clauses of § 3106(1)(b)—"direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used" and "direct result of physical contact with . . . property being lifted onto or lowered from the vehicle in the loading or unloading process"—should not be construed as independent exceptions. But see *Winter v Auto Club of Mich*, 433 Mich 446, 460; 446 NW2d 132 (1989), citing § 3106(1)(b) ("The second [clause] requires that the injury be a direct result of physical contact with 'property being lifted onto or lowered from the vehicle in the loading or unloading process.' "). However, defendant did not contest the meaning of this subdivision in the lower courts, and we did not request briefing on the issue. We decline to address defendant's arguments in this regard because they are unpreserved. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234 & n 23; 507 NW2d 422 (1993) ("Issues raised for the first time on appeal are not ordinarily subject to review" and "this Court has repeatedly declined to consider arguments not presented at a lower level").

were bundled together) from his vehicle to the ground during the unloading process. Those items are "property" because they are things "owned or possessed" by plaintiff.[27] And plaintiff testified that he was in physical contact with his property and lowering it from the vehicle when he sustained the injury.

That leaves only the question whether a reasonable jury could find that plaintiff's injury was the "direct result" of this physical contact with the property. At an earlier stage of this case, defendant argued that the statutory phrase "direct result" means that the injury must be "due to" physical contact with the property—a position that the dissent now advances. We agree. Plaintiff must show that his injury was caused by contact with the property being loaded or unloaded.[28]

Here, plaintiff testified: "I leaned in the vehicle, picked up my items, brought them outside as I twisted to set them down. That's when I heard bang, stuff fell to the ground, I fell in the truck." The dissent contends, in essence, that this testimony establishes only a temporal, rather than a causal, relationship between plaintiff's contact with the property and his injury and is therefore insufficient to create a jury question. It is true, of course,

---

[27] *Merriam-Webster's Collegiate Dictionary* (11th ed). "All words and phrases shall be construed and understood according to the common and approved usage of the language . . . ." MCL 8.3a. "To understand the meaning of words in a statute that are not otherwise defined, we may resort to dictionary definitions for guidance." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 559 n 41; 886 NW2d 113 (2016).

[28] See, e.g., *Celina Mut Ins Co v Citizens Ins Co*, 136 Mich App 315, 320; 355 NW2d 916 (1984) ("Stephens's injuries were caused by contact with the property being loaded and unloaded, the steel."). The dissent's person-struck-by-lightning hypothetical is therefore a red herring.

that plaintiff did not himself testify as to causation, but we do not believe it follows that a jury could not reasonably infer causation from plaintiff's testimony and other evidence in the record.[29]

We can cite, and indeed the dissent also cites, several cases in which a plaintiff's injury was caused (or alleged to be caused) by the kinetic energy, weight, or some other physical property associated with the thing being loaded or unloaded from a parked motor vehicle.[30] Whether, in this case, plaintiff's property was of sufficient size and weight to cause plaintiff's injury is, in our view, an issue for the jury to decide—unless we could conclude, as a matter of law, that it could not have caused the injury alleged.[31]

---

[29] Plaintiff submitted into evidence an affidavit from Dr. Surinder Kaura, averring that, in his opinion, plaintiff's "calf and low back injuries arose out of the process of unloading the items as Mr. Kemp described, and were not merely incidental to the unloading process." As both the majority and dissent below noted, the trial court erred by failing to view Dr. Kaura's affidavit in the light most favorable to plaintiff.

[30] See, e.g., *Arnold v Auto-Owners Ins Co*, 84 Mich App 75, 80; 269 NW2d 311 (1978) (reversing summary judgment for the insurance companies when the plaintiff ruptured a disk in his back while he was lifting a ramp onto the upper deck of his employer's truck); *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 182; 870 NW2d 731 (2015) (holding that "the statute does not require that the property, itself, inflict the injuries" and rejecting the insurer's "attempts to fundamentally rewrite the statute to state that a plaintiff's injury must occur as a result of being *struck* by the property being loaded or unloaded"); *Ritchie v Federal Ins Co*, 132 Mich App 372, 373-374; 347 NW2d 478 (1984) (holding that there was a question of fact about whether the plaintiff's contact with the ice directly resulted in the injury he sustained when the stairway he was descending collapsed as he was carrying a 50-pound block of ice to load it onto his truck).

[31] We agree that an injury allegedly caused by unloading the dissent's hypothetical feather would almost certainly not survive summary disposition.

We believe plaintiff's bundled-together briefcase, overnight bag, thermos, and lunch box clears this threshold.[32]

Accordingly, plaintiff established a question of fact as to whether his injury falls within the parked motor vehicle exception in the second clause of § 3106(1)(b) because it "was a direct result of physical contact with . . . property being lifted onto or lowered from the vehicle in the loading or unloading process."

### C. STEP TWO: TRANSPORTATIONAL FUNCTION REQUIREMENT

Next, we must determine whether plaintiff has met the transportational function requirement.[33] In *McKenzie*, this Court discussed this requirement as follows:

---

[32] The dissent's citation of *Dinkins v State Farm Mut Auto Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 13, 2012 (Docket No. 307363), is, therefore, unhelpful because it begs the factual question at issue in this case. We also find no reasoned basis for excluding, as a matter of law, injuries caused when a person uses a "twisting action" to lower property to the ground, as distinct from other methods a person may use to load or unload property.

[33] Because we conclude that plaintiff has met this requirement, we need not address his argument that "the Court of Appeals majority erred in tacking on to MCL 500.3106(1)(b) a requirement that the injury fulfill the 'transportational function' of the vehicle." (Capitalization altered.) Compare *McKenzie*, 458 Mich at 218 (concluding that courts must analyze the transportational function requirement for parked vehicles), and *Putkamer*, 454 Mich at 632-633 (same), with *Winter*, 433 Mich at 457 ("In limiting no-fault benefits to injuries 'arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle,' the Legislature realized that it would be inherently difficult to determine when a *parked* vehicle is in use 'as a motor vehicle.' Accordingly, the Legislature specifically described in subsections (a)-(c) of § 3106(1) the limited circumstances when a parked vehicle is being used 'as a motor vehicle.' "); see also *Drake v Citizens Ins Co of America*, 270 Mich App 22, 30; 715 NW2d 387 (2006) ("[A] cogent argument can be made that if any of the three parked-vehicle exceptions applies in a given case, the injury, by statutory mandate, *does arise* out of the ownership, operation, maintenance, or use of the parked vehicle as a motor vehicle; therefore, PIP benefits would be recoverable.").

[T]he phrase "use of a motor vehicle 'as a motor vehicle' " would appear to invite contrasts with situations in which a motor vehicle is not used "as a motor vehicle." This is simply to say that the modifier "as a motor vehicle" assumes the existence of other possible uses and requires distinguishing use "as a motor vehicle" from any other uses. While it is easily understood from all our experiences that most often a vehicle is used "as a motor vehicle," i.e., to get from one place to another, it is also clear from the phrase used that the Legislature wanted to except those other occasions, rare as they may be, when a motor vehicle is used for other purposes, e.g., as a housing facility of sorts, as an advertising display (such as at a car dealership), as a foundation for construction equipment, as a mobile public library, or perhaps even when a car is on display in a museum. . . . It seems then that when we are applying the statute, the phrase "as a motor vehicle" invites us to determine if the vehicle is being used for transportational purposes.[34]

The Court concluded that "whether an injury arises out of the use of a motor vehicle 'as a motor vehicle' under § 3105 turns on whether the injury is closely related to the transportational function of motor vehicles."[35] To answer this question, we must examine the activity the plaintiff was engaged in at the time of the injury.[36]

_____

[34] *McKenzie*, 458 Mich at 218-219.

[35] *Id*. at 225-226.

[36] See *id*. at 219. In *McKenzie*, we observed that "no-fault insurance generally covers damage directly resulting from an accident involving moving motor vehicles . . . because moving motor vehicles are quite obviously engaged in a transportational function." *Id*. at 221, citing *Turner v Auto Club Ins Ass'n*, 448 Mich 22; 528 NW2d 681 (1995). The question becomes a little more complicated when a vehicle is stationary because "[i]njuries involving parked motor vehicles do not normally involve the vehicle *as a motor vehicle*." *Miller v Auto-Owners Ins Co*, 411 Mich 633, 639; 309 NW2d 544 (1981). The statutory exceptions to the parked vehicle exclusion in § 3106(1) outline situations in which, "although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle." *Id*. at 640-641. In *Putkamer*, we held that "entering a vehicle in order to travel in it is closely related to the transportational function." *McKenzie*, 458 Mich at 221, citing *Putkamer*, 454 Mich at 636-637. Because the vehicle in *Putkamer* was stationary, we examined whether the activity the plaintiff was engaged in—entering a vehicle in order to travel in it—was closely related to the vehicle's transportational function. And, properly understood,

In this case, it is undisputed that plaintiff was injured while unloading personal items from his vehicle upon arrival at his destination. We believe the conveyance of one's belongings is also closely related to—if not an integral part of—the transportational function of motor vehicles.[37] Lending support to our interpretation of the statutory language is that "the dictionary definition of 'vehicle' is 'any device or contrivance for carrying or conveying persons or *objects*, [especially] over land or in space . . . .' "[38] We

---

*McKenzie* itself followed this same mode of analysis. In applying its new test, the Court stated:

> If we apply this test here, it is clear that the requisite nexus between the injury and the transportational function of the motor vehicle is lacking. *At the time the injury occurred, the parked camper/trailer was being used as sleeping accommodations.* This use is too far removed from the transportational function to constitute use of the camper/trailer "as a motor vehicle" at the time of the injury. [*McKenzie*, 458 Mich at 226 (emphasis added).]

It is evident that, despite referring to the "nexus between the injury and the transportational function of the motor vehicle," the *McKenzie* Court's analysis of the second step of the *Putkamer* framework was focused on whether the *activity* giving rise to the injury—sleeping in a parked camper/trailer—was closely related to the vehicle's transportational function. We believe this is the proper inquiry in the second step of the *Putkamer* framework in cases involving parked motor vehicles.

[37] See *Walega v Walega*, 312 Mich App 259, 272; 877 NW2d 910 (2015) (finding that an injury that occurred while the plaintiff was using a truck to move or transport a very heavy safe was closely related to the transportational function of the vehicle).

[38] *McKenzie*, 458 Mich at 219 (emphasis added), citing *Webster's New World Dictionary* (3d college ed). Also supporting our conclusion is the fact that the Uniform Motor Vehicle Accident Reparations Act, from which the "use of a motor vehicle as a motor vehicle" limitation in § 3105(1) originated, see *McKenzie*, 458 Mich at 217-218, citing *Thornton v Allstate Insurance Co*, 425 Mich 643, 657; 391 NW2d 320 (1986), provides limited coverage for injuries arising from conduct in the course of loading and unloading a vehicle. See Uniform Motor Vehicle Accident Reparations Act (UMVARA), § 1(a)(6); 14 ULA 43-44 (2005) (defining "maintenance or use of a motor vehicle" as "maintenance

have little difficulty concluding that a person who is engaged in the activity of unloading his or her personal effects from a vehicle upon arrival at a destination is using the vehicle for its transportational function, i.e., for the conveyance of persons or objects from one place to another.

The Court of Appeals, in reaching a contrary conclusion, relied heavily on *Shellenberger v Ins Co of North America*, stating as follows:

> [T]he removal of personal effects from a parked vehicle . . . "cannot be said to result from some facet particular to the normal functioning of a motor vehicle. The need to make similar movements in order to reach for [personal effects] routinely occurs in offices, airports, homes, conference rooms, courtrooms, restaurants, and countless other settings . . . . The fact that plaintiff's movement in reaching for [his personal effects] occurred in the interior of the truck does not transform the incident into a motor vehicle accident for no-fault purposes."[39]

---

or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, . . . conduct in the course of loading and unloading the vehicle" if "the conduct occurs while occupying, entering into, or alighting from it"). From this, we can deduce that the drafters of the UMVARA believed that a vehicle is being used as a motor vehicle, i.e., for transportational purposes, during at least some portions of the loading and unloading process.

Finally, it is worth noting that if we agreed with the Court of Appeals that the transportational function requirement bars coverage for injury occurring during loading or unloading activities, see *Kemp*, unpub op at 3, we would render the second clause of MCL 500.3106(1)(b) nugatory—something courts should strive to avoid. See *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) ("[C]ourts 'must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.' "), quoting *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

[39] *Kemp*, unpub op at 3, quoting *Shellenberger v Ins Co of North America*, 182 Mich App 601, 605; 452 NW2d 892 (1990) (second and third alterations in original).

We find *Shellenberger*'s reasoning to be troubling for the following reasons. First, while it appropriately focuses on the activity the plaintiff was engaged in at the time of the injury—for example, moving a briefcase in *Shellenberger* and unloading personal effects from a parked vehicle in this case—the proper inquiry under *McKenzie* is whether that activity was *closely related* to the vehicle's transportational function.[40] There is no requirement that the activity at issue "result from" the vehicle's transportational function—that requirement would confuse the transportational function and causation inquiries. And, more importantly, *Shellenberger* erroneously conflates transportational function with "some facet particular to the normal functioning of a motor vehicle."[41] Contrary to *Shellenberger*'s suggestion, *Thornton* does not require that the type of movements made or the injuries suffered be unique to motor vehicles or that they may only occur in a motor vehicle.[42] Instead, as noted above, the question at this stage is simply whether the activity plaintiff was engaged in at the time of the injury was closely related to the vehicle's transportational function. That the injury could have occurred elsewhere is of no moment.

This is not the first time we have rejected *Shellenberger*'s analysis. In *McCarthy v Allstate Ins Co*, the Court of Appeals, after quoting the same passage from *Shellenberger*, observed that "the movements that [the claimant] made to lift [a box of pasties]—twisting, turning, reaching behind her, attempting to lift the box—could have occurred in

---

[40] See note 36 of this opinion.

[41] *Shellenberger*, 182 Mich App at 605.

[42] See *Thornton*, 425 Mich at 643.

her home, her place of work, and 'countless other settings where no-fault insurance does not attach.' "[43]   The *McCarthy* Court held that the causation requirement was not satisfied, stating as follows:

> We therefore conclude that, regardless of whether an item is being loaded, unloaded, or merely moved around within the vehicle, an injury resulting from the movement of a person reaching for or handling that item is not sufficiently connected causally to the use of the vehicle to transport the item.  Stated differently, we conclude that although McCarthy's injury occurred when unloading her vehicle and therefore arose out of her use of that vehicle as a motor vehicle, the injury resulted not from any circumstance peculiar to motor vehicles but from the act of lifting the box of pasties.  As the *Shellenberger* panel noted, similar movements are made in a wide variety of settings, and we conclude that the fact that McCarthy's injury occurred inside a vehicle does not provide a sufficient causal connection.  Simply put, we conclude that the vehicle in this case was merely the situs of injury and not the cause of it.[44]

On appeal, we reversed the Court of Appeals' analysis and held that the "plaintiff established a causal link between her injury and the motor vehicle.  The box of pasties she was unloading from her car snagged on the front seat and she hurt her back trying to free the box up to lift it out."[45]  Having rejected *Shellenberger*'s analysis on two separate occasions, we now overrule it to the extent that it is inconsistent with our opinion today.

We hold that unloading property from a vehicle upon arrival at a destination constitutes use of a motor vehicle as a motor vehicle and satisfies the transportational

---

[43] *McCarthy v Allstate Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued June 4, 1999 (Docket No. 212629), p 4.

[44] *Id*.

[45] *McCarthy v Allstate Ins Co*, 462 Mich 860 (2000), citing *Putkamer*, 454 Mich 626.

15

function requirement.[46]  In the present case, plaintiff testified that he sustained an injury while unloading his belongings from his vehicle upon arriving at his house.  As a result, plaintiff satisfied the transportational function requirement as a matter of law.

### D.  STEP THREE: CAUSAL RELATIONSHIP

Finally, we must consider whether "the injury had a causal relationship to the parked motor vehicle that [was] more than incidental, fortuitous, or but for."[47]  In *Thornton*, we adopted the following causation test set forth in *Kangas v Aetna Casualty & Surety Co*:

> "[T]here . . . must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for.  The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle."[48]

After noting "a significant difference between the contractual language construed in *Kangas*—'arising out of the use of a motor vehicle'—and the statutory language at issue [in *Thornton*]: 'arising out of the use of a motor vehicle *as a motor vehicle*,'"[49] we concluded that there can be no recovery of no-fault PIP benefits unless the causal

---

[46] We do not address whether unloading activity occurring some period of time after the vehicle arrives at a destination satisfies the transportational function requirement because the issue is not before us in this case.

[47] *Putkamer*, 454 Mich at 636.

[48] *Thornton*, 425 Mich at 650-651, quoting *Kangas v Aetna Cas & Surety Co*, 64 Mich App 1, 17; 235 NW2d 42 (1975); see also *Putkamer*, 454 Mich at 635-636.

[49] *Thornton*, 425 Mich at 656-657.

connection between the injury and the use of a motor vehicle as a motor vehicle "is more than 'but for,' incidental, or fortuitous."[50]

In *Thornton*, as noted previously, we explained that " '[e]ach of the exceptions to the parking exclusion . . . describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle.' "[51] We have already concluded above that plaintiff created an issue of fact that his conduct in unloading his vehicle upon arrival at his destination falls within the parked motor vehicle exception contained in the second clause of § 3106(1)(b). And we have concluded that, as a matter of law, plaintiff was using his vehicle as a motor vehicle, i.e, for a transportational purpose, when he was unloading his property from it. All that is left, then, is to determine whether plaintiff's injury had a causal relation to his conduct in unloading his vehicle that was more than incidental, fortuitous, or but for.[52]

We believe that plaintiff's injury—suffered while he was unloading his property from his vehicle upon his arrival home—was foreseeably identifiable with the normal use of the vehicle. The parked motor vehicle exception contained in the second clause of

---

[50] *Id*. at 659-660.

[51] *Id*. at 659, quoting *Miller*, 411 Mich at 640-641.

[52] It is important to note that the three steps of the *Putkamer* framework are not discrete inquiries. We recognized as much in *McKenzie*, when we instructed that "what constitutes use of a motor vehicle 'as a motor vehicle' also figures in a causation analysis, i.e., whether an injury's relation to the use of a motor vehicle *as a motor vehicle* is more than but for, incidental, and fortuitous." *McKenzie*, 458 Mich at 222 n 8, quoting *Thornton*, 454 Mich at 661 (quotation marks omitted). In other words, the second and third steps bear an obvious logical relationship to one another.

§ 3106(1)(b) has its own causation component. See MCL 500.3106(1)(b) (stating that "the injury was a *direct result* of physical contact") (emphasis added). Having already concluded that plaintiff has established a question of fact regarding whether he met this causation requirement, we also conclude that he has raised a question of fact regarding whether his injury had a causal relation to the use of a motor vehicle as a motor vehicle that was more than incidental, fortuitous, or but for.[53]

## IV. CONCLUSION

We hold that plaintiff created an issue of fact regarding whether he satisfied the parked motor vehicle exception in § 3106(1)(b) and the corresponding causation requirement of the three-step framework used to analyze PIP coverage for injuries related to parked motor vehicles. And we hold as a matter of law that plaintiff satisfied the transportational function requirement. Therefore, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.

David F. Viviano
Bridget M. McCormack
Richard H. Bernstein
Joan L. Larsen

---

[53] We decline the dissent's invitation to reconsider whether *Putkamer*'s causation requirement is consistent with the plain language of § 3106(1)(b) when no party has asked us either to overrule *Putkamer*'s causation requirement or to grant leave to appeal on this ground.

STATE OF MICHIGAN

SUPREME COURT

DANIEL KEMP,

      Plaintiff-Appellant,

v

No. 151719

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

      Defendant-Appellee.

_____

ZAHRA, J. (*dissenting*).

In this no-fault action arising from plaintiff's interaction with items in a parked vehicle, the majority concludes "that plaintiff created an issue of fact regarding whether he satisfied the parked motor vehicle exception in MCL 500.3106(1)(b) and the corresponding causation requirement."[1]  The majority also concludes "as a matter of law that plaintiff satisfied the transportational function requirement."[2]  I respectfully dissent. I would decide this case on the basis of MCL 500.3106(1)(b) alone and hold that plaintiff has failed to establish a genuine factual basis from which to conclude that "the injury was a *direct result of physical contact with . . . property* being lifted onto or lowered from the vehicle in the loading or unloading process."[3]

_____

[1] *Ante* at 1-2.

[2] *Ante* at 2.

[3] MCL 500.3106(1)(b) (emphasis added).

Further, I would take this opportunity to reexamine *Putkamer v Transamerica Ins Corp of America*[4] and its progeny. In my view, the causation prong of *Putkamer*'s analytical framework does not find its origin in the plain language of MCL 500.3106, and caselaw addressing the parked vehicle provision, over the years, has drifted well beyond the language of the no-fault act, MCL 500.3101 *et seq*. This case makes clear that the third prong, i.e., the causation prong, of *Putkamer*'s general test cannot apply to injuries arising from parked vehicles under MCL 500.3106(1)(b). And because this error of statutory interpretation will often reoccur, the most prudent action at this time would be to grant plaintiff's application and, with the benefit of full briefing and argument, reexamine the operation of MCL 500.3106 and the vitality of *Putkamer*. I believe that failing to correct the misinterpretation of MCL 500.3106 will "impose far more injury upon the judicial process than any effect associated with our decision to apply the policy decisions of the Legislature instead of the policy decisions of this Court . . . ."[5]

## I. MCL 500.3106(1)(b)

Under Michigan's no-fault insurance act and in regard to this case, "[a]ccidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless," as set forth in MCL 500.3106(1)(b), "*the injury was a direct result of physical contact with . . . property* being lifted onto or

---

[4] *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 635-636; 563 NW2d 683 (1997).

[5] *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 183; 615 NW2d 702 (2000).

lowered from the vehicle in the loading or unloading process."[6]  In this case, plaintiff sustained injury while unloading personal belongings from his parked vehicle.  He testified: "I leaned in the vehicle, picked up my items, brought them outside as I twisted to set them down.  That's when I heard bang, stuff fell to the ground, I fell in the truck."  For purposes of this appeal, I accept the majority's characterization of plaintiff's testimony "that he was in physical contact with his property and lowering it from the vehicle when he sustained the injury."[7]

Regardless of whether the term "property" is afforded its plain meaning as the majority posits[8] or its contextual meaning of "cargo or freight" as first suggested by defendant on appeal in this Court,[9] this term is not the focal point of this case.  The

---

[6] MCL 500.3106(1) (emphasis added).

[7] *Ante* at 8.

[8] See *ante* at 8.

[9] Defendant presents a novel and intriguing argument that the phrase "property being lifted onto or lowered from the vehicle in the loading or unloading process" must be read in relation to the preceding phrase—"equipment permanently mounted on the vehicle, while the equipment was being operated or used."  Defendant asserts that MCL 500.3106(1)(b) thus refers only to cargo or freight that is being "lifted onto or lowered from the vehicle in the loading or unloading process," not to personal items being removed from a vehicle's interior or trunk.

Notably, this argument is contrary to *Arnold v Auto-Owners Ins Co*, 84 Mich App 75, 79-80; 269 NW2d 311 (1978), in which the Court of Appeals held that MCL 500.3106(1)(b) contains two independent clauses and provides coverage when the injury was the direct result of physical contact with either (1) "equipment permanently mounted on [the] motor vehicle while [the] equipment was being operated or used," or (2) "property being lifted onto or lowered from [the] motor vehicle in the loading or unloading process."  (Emphasis omitted.)  Defendant has not acknowledged this decision, but I question whether *Arnold* was correctly decided.

disputed statutory language is whether "the injury was a *direct result* of physical contact with . . . property being lifted onto or lowered from the vehicle in the loading or unloading process."[10] On this point, the majority concludes that plaintiff's contact with his briefcase, overnight bag, thermos, and unfoldable lunch bags while unloading them from his vehicle creates a genuine issue of material fact as to whether this property caused the injury alleged.[11] In support of its conclusion, the majority relies on caselaw that, as summarized by the majority, requires that "plaintiff's injury [be] caused (or alleged to be caused) by the kinetic energy, weight, or some other physical property associated with the thing being loaded or unloaded from a parked motor vehicle."[12] In this case, while plaintiff was in physical contact with the property, there is no evidence to indicate that physical contact with the property—the "kinetic energy, weight, or some

---

MCL 500.3106(1)(b) contains two clauses, but they are not entirely independent of one another. Were the clauses actually independent in application, the Legislature would have separated these clauses and created a fourth parked vehicle exception under MCL 500.3106(1) instead of including the two clauses in the single exception under MCL 500.3106(1)(b). Stated differently, even though the two clauses are contained in one exception and are separated by a disjunctive term, the clauses may nonetheless be read together to provide contextual meaning to the term "property" as it is used in MCL 500.3106(1)(b). And when read together, a cogent argument can be made that, in context, "property being lifted onto or lowered from the vehicle in the loading or unloading process" refers to property being lifted onto or lowered from a vehicle while using or operating equipment permanently mounted on the vehicle. Despite my openness to defendant's argument, I agree with the majority that defendant failed to preserve this issue. See *ante* at 7 n 26.

[10] MCL 500.3106(1)(b) (emphasis added).

[11] *Ante* at 8-10.

[12] *Ante* at 9.

4

other physical property associated with the thing being loaded or unloaded"—caused the injury, rather than the twisting action of placing the property on the ground.[13]

In my view, plaintiff's testimony that he was in physical contact with the property he was removing from his truck when he sustained the injury does not establish that "the injury was a *direct result* of physical contact with . . . property . . . ."[14] Plaintiff's testimony indicated that the injury occurred while he was turning and twisting to set down his personal items. This suggests that the act of unloading the property caused the injury, rather than plaintiff's contact with the property. While plaintiff testified that he was unloading his "briefcase, overnight bag, thermos[, and] . . . unfoldable lunch bags," all of which were bound together, he made no assertion that any or all of these items caused his injury.[15] Therefore, the record presented to this Court does not support the

---

[13] See *Dinkins v State Farm Mut Auto Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 13, 2012 (Docket No. 307363), p 3 ("There are no characteristics about a bag containing DVDs that would cause an ordinary person to injure oneself in the process of unloading it from a parked car. If plaintiff's bag was peculiarly heavy or unwieldy in any way, it was not clearly set forth in the record before the trial court when it ruled on defendant's motion for summary disposition.").

[14] MCL 500.3106(1)(b) (emphasis added).

[15] I disagree with the majority's suggestion that the affidavit from Dr. Surinder Kaura was not properly considered by the trial court. Rather, as the Court of Appeals majority explained, "viewing the physician's affidavit in the light most favorable to plaintiff does not change the fact that plaintiff's injury did not arise 'out . . . of the ownership, operation[,] maintenance, or use of the parked motor vehicle as a motor vehicle.' " *Kemp v Farm Bureau Gen Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued May 5, 2015 (Docket No. 319796), p 3 n 2. After explaining that he accepted plaintiff's version of events, Kaura stated, "[i]t is my opinion that his calf and low back injuries arose out of the process of unloading the items as Mr. Kemp described, and were not merely incidental to the unloading process." The trial court was correct that Kaura's affidavit adds nothing to plaintiff's testimony and is therefore irrelevant. Further, "the

5

conclusion that there exists a genuine issue of material fact regarding whether plaintiff's injury was a "direct result" of his physical contact with the property he was unloading from his truck.[16]

The majority fails to attach independent meaning to the phrase "direct result." That is, the majority suggests that a plaintiff establishes that his or her injury was a "direct result" merely by presenting evidence that the plaintiff was injured *while* in physical contact with property that he or she was loading or unloading from a vehicle. But the statute plainly requires that the injury be a *direct result* of physical contact with property that is being loaded or unloaded. A person struck by lightning while in physical contact with property that he or she is loading or unloading cannot be said to be injured as a *direct result* of physical contact with that property. In both legal and common parlance, the word "direct" in this context means to be "[f]ree from extraneous influence; immediate,"[17] and "result" commonly means "consequence, effect, or

_____

opinion of an expert may not extend to the creation of new legal definitions and standards and to legal conclusions." *Carson Fischer Potts & Hyman v Hyman*, 220 Mich App 116, 122; 559 NW2d 54 (1996). Kaura's affidavit essentially parrots plaintiff's allegations and concludes that the exception in MCL 500.3106(1)(b) has been satisfied. In my view, this is improper evidence asserting a legal standard and conclusion.

[16] MCL 500.3106(1)(b). Contrary to any implication in the majority opinion, I would not categorically exclude from no-fault coverage lifting or carrying injuries occurring during the loading or unloading process. I would only exclude those injuries that do not "directly result" from physical contact with the property. In the absence of a showing that the injury "directly resulted" from physical contact with the property, any injury that happens to occur while a person is lifting anything, even a feather, from a vehicle would be covered. As discussed next in this opinion, this interpretation not only ignores the "direct result" requirement but also renders the statute arbitrary in its application.

[17] *Black's Law Dictionary* (10th ed). See also *Webster's New World College Dictionary* (5th ed) ("with nothing or no one in between; immediate; close, firsthand, or personal

6

conclusion."[18]  Reading these terms together, one gleans that a plaintiff's injury must have arisen from an uninfluenced and immediate consequence of physical contact with property being lifted onto or lowered from the vehicle in the loading or unloading process.  But, again, plaintiff has presented no evidence at all that physical contact with his property caused his injury.

Perhaps if the statute provided instead that coverage is afforded for an injury that in any way results from the loading or unloading process, I would be inclined to agree with the majority.  But it does not, and the majority has not identified any evidence that plaintiff's injury was the direct result of physical contact with his property.  Even plaintiff's expert could only conclude that plaintiff's "calf and low back injuries arose out of the process of unloading the items as [plaintiff] described . . . ."[19]  Simply put, an

---

[direct contact, direct knowledge]"); *Random House Webster's College Dictionary* (2001) ("without intermediary agents, conditions, etc.; immediate: *direct contact*"); *Merriam-Webster's Collegiate Dictionary* (11th ed) ("marked by absence of an intervening agency, instrumentality or influence").

[18] *Black's Law Dictionary* (10th ed).  See also *Webster's New World College Dictionary* (5th ed) ("to happen or issue as a consequence or effect"); *Random House Webster's College Dictionary* (2001) ("to arise or proceed as a consequence of actions, premises, etc.; be the outcome"); *Merriam-Webster's Collegiate Dictionary* (11th ed) ("something that results as a consequence, issue, or conclusion").

[19] Likewise, the Court of Appeals' dissenting judge ignored the statutory requirement that the injury directly result from physical contact with property, relying only on plaintiff's "very act—removing items from the vehicle and attempting to set them down—that was the cause of the alleged injury." *Kemp v Farm Bureau Gen Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued May 5, 2015 (Docket No. 319796) (BECKERING, P.J., dissenting), p 6.

injury arising out of the process of unloading items from a vehicle does not establish that "the injury was a direct result of physical contact with . . . property . . . ."[20]

There exists published caselaw from the Court of Appeals consistent with my interpretation of MCL 500.3106(1)(b). For instance, in *Celina Mut Ins Co v Citizens Ins Co*,[21] the Court of Appeals sustained a claim under MCL 500.3106(1)(b) when, in the process of loading a semitrailer, "the crane operator accidentally knocked a bundle [of steel tubing] off a previously stacked pile, and that bundle rolled into and injured [the claimant]."[22] Another example is *Adanalic v Harco Nat'l Ins Co*,[23] in which the claimant was seriously injured while unloading a pallet from a truck onto a semitrailer.

---

[20] MCL 500.3106(1)(b). Further, MCL 500.3106(1)(b) plainly requires that the injury be a *direct result* of physical contact with *property* that is being loaded or unloaded. If, as the majority seems to conclude, MCL 500.3106(1)(b) encompasses injuries that occur as a result of any physical contact with property being loaded or unloaded from a vehicle, the requirement that there be physical contact with property becomes very artificial. Under the majority's interpretation, if a claimant is in the process of loading or unloading a vehicle and is injured as the claimant leans into the vehicle but before making contact with the property, the claimant is not entitled to PIP benefits. On the other hand, a claimant is entitled to PIP benefits if the claimant is ever so slightly touching property being loaded or unloaded from the vehicle when the injury results. Simply stated, the majority's interpretation creates a seemingly arbitrary line that encompasses injuries during the loading or unloading process only if these injuries happen to occur when a claimant is in physical contact with the property being loaded or unloaded. By giving plain meaning to the "directly results" language of MCL 500.3106(1)(b) as it is related to the physical-contact requirement, a claimant is entitled to PIP benefits under the parked vehicle provision when contact with the property in some fashion causes the injury.

[21] *Celina Mut Ins Co v Citizens Ins Co*, 136 Mich App 315; 355 NW2d 916 (1984).

[22] *Id*. at 317-318.

[23] *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173; 870 NW2d 731 (2015).

Specifically, while the claimant "was pulling the pallet with a belt," "[t]he ramp connecting the trailer and the [truck] collapsed, which caused the pallet to fall to the ground, which, in turn, caused [the claimant] to fall to the ground."[24] The panel noted that "the statute does not require that the property, itself, inflict the injuries. It only requires that the injuries directly result from physical contact with the property."[25] Therefore, reasoned the panel, "the statute is satisfied . . . where [the claimant's] physical contact with the pallet caused him to fall to the ground, directly resulting in his injuries."[26] In sum, these cases were sustained because the property directly contributed to the injury.[27]

---

[24] *Id*. at 182 (quotation marks omitted).

[25] *Id*. (quotation marks omitted).

[26] *Id*. (quotation marks omitted).

[27] In *Ritchie v Federal Ins Co*, 132 Mich App 372; 347 NW2d 478 (1984), the Court of Appeals sustained a claim under MCL 500.3106(1)(b) even though it was questionable whether the injury was a "direct result" of physical contact with property being lifted onto or lowered from the parked vehicle in the loading or unloading process. The claimant "was injured when the stairs collapsed under him as he held a block of ice over his head while in the process of loading his truck." *Id*. at 375. The panel explained that "[t]he stairway broke because of the combined weight of plaintiff and the block of ice," and noted that "[d]efendant's brief admits that '[l]ogic would dictate that the stairway gave way under the weight of the plaintiff and the block of ice.' " *Id*. (third alteration in original). The panel concluded that "applying the commonly approved usage of the language, 'physical contact' with the 'property being lifted' during the loading process could arguably have 'directly resulted' in causing plaintiff's injury. The weight of the ice may have been the straw that broke the camel's back." *Id*.

Even though the evidence of a "direct injury" in *Ritchie* was somewhat anecdotal, the panel sustained the claim noting that at the least " 'the property being lifted' . . . could *arguably* have 'directly resulted' in causing plaintiff's injury." *Id*. (emphasis added). In

9

## II. *PUTKAMER v TRANSAMERICA INS CORP OF AMERICA*

As previously mentioned, I would take this opportunity to reexamine *Putkamer*[28] and its progeny. In my view, there is little question that the third prong of *Putkamer*'s general test cannot apply to injuries arising from parked vehicles under MCL 500.3106(1)(b).

In *Putkamer*, the "plaintiff was getting into her vehicle on the driver's side, [and] she fell on the ice and was injured."[29] Citing our decision in *Winter v Auto Club of Mich*,[30] we explained that "[w]here the motor vehicle is parked, the determination whether the injury is covered by the no-fault insurer generally is governed by the provisions of subsection 3106(1) alone."[31] We further explained that "[t]here is no need for an additional determination whether the injury is covered under subsection 3105(1)."[32] Though it seems clear from that language that *Putkamer* embraced the proposition that MCL 500.3105(1) is not controlling in parked vehicle cases,[33] the Court

---

this case, plaintiff has only established that his injury directly resulted from his physical movements while he happened to be unloading property from his vehicle.

[28] *Putkamer*, 454 Mich 626.

[29] *Id*. at 628.

[30] *Winter v Auto Club of Mich*, 433 Mich 446; 446 NW2d 132 (1989).

[31] *Putkamer*, 454 Mich at 632, citing *Winter*, 433 Mich at 457.

[32] *Putkamer*, 454 Mich at 632-633, citing *Winter*, 433 Mich at 458 n 10.

[33] MCL 500.3105(1) provides, "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter."

then explained that the "underlying policy of the parked motor vehicle exclusion . . . is to ensure that an injury that is covered by the no-fault act involves use of the parked motor vehicle *as a motor vehicle*."[34]

This purported underlying policy was first explained in *Miller v Auto-Owners Ins Co*,[35] which involved a claim for accidental bodily injury arising out of the maintenance of a motor vehicle, although the vehicle was parked at the time of the accident. Rather than addressing the relevant statutory text, the Court in *Miller* engaged in "an assessment of the respective policies appearing from the requirement of coverage in § 3105(1) and the exclusion from that required coverage for parked vehicles in § 3106 as they bear upon the scope of coverage intended by the Legislature."[36] The Court opined that the policy underlying the parked vehicle exclusion was that

> [e]ach of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle. The underlying policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident as a motor vehicle.[37]

The *Miller* Court held that because "[t]he policies underlying § 3105(1) and § 3106 thus are complementary rather than conflicting," "[c]ompensation is thus required

---

[34] *Putkamer*, 454 Mich at 633.

[35] *Miller v Auto-Owners Ins Co*, 411 Mich 633; 309 NW2d 544 (1981).

[36] *Id*. at 638.

[37] *Id*. at 640-641.

11

by the no-fault act without regard to whether [the plaintiff's] vehicle might be considered 'parked' at the time of injury."[38]  By adopting *Miller*'s dubious assertions of "underlying policies" of the no-fault act,[39] the *Putkamer* Court opened itself to further departure from the textual basis of the law.  While there is some textual basis under MCL 500.3106(1) to require that the injury be " 'directly related' to the vehicle's character as a motor vehicle,"[40] i.e., "parked vehicle as a motor vehicle,"[41] there is no basis to conclude "that subsection 3106(1), like subsection 3105(1), requires that, in order to recover, the injury must have a causal relationship to the motor vehicle that is more than incidental, fortuitous, or but for."[42]

   *Putkamer* broadly held that

---

[38] *Id*. at 641.

[39] The following portion of *Miller* has been effectively disavowed:

> Section 3106(b) [now MCL 500.3106(1)(b)] recognizes that some parked vehicles may still be operated as motor vehicles, creating a risk of injury from such use as a vehicle.  Thus a parked delivery truck may cause injury in the course of raising or lowering its lift or the door of a parked car, when opened into traffic, may cause an accident. Accidents of this type involve the vehicle as a motor vehicle.  [*Miller*, 411 Mich at 640, disavowal recognized by *LeFevers v State Farm Mut Auto Ins Co*, 493 Mich 960 (2013).]

Further, this Court has ordered argument to determine whether *Miller* is viable precedent and, if so, whether it should be overturned.  *Spectrum Health Hosp v Westfield Ins Co*, 498 Mich 969 (2016).

[40] *Putkamer*, 454 Mich at 634.

[41] MCL 500.3106(1).

[42] *Putkamer*, 454 Mich at 635.

where a claimant suffers an injury in an event related to a parked motor vehicle, he must establish that the injury arose out of the ownership, operation, maintenance, or use of the parked vehicle by establishing that he falls into one of the three exceptions to the parking exclusion in subsection 3106(1). In doing so under § 3106, he must demonstrate that (1) his conduct fits one of the three exceptions of subsection 3106(1); (2) the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle *as a motor vehicle*; and (3) the injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for.[43]

In my opinion, the *Putkamer* test does not bear sufficient resemblance to the actual statutory text at issue. MCL 500.3106(1) provides that:

> Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

> (a) The vehicle was parked in such a way as to cause an unreasonable risk of the bodily injury which occurred.

> (b) . . . [T]he injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

> (c) . . . [T]he injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

I agree with *Putkamer* to the extent that it concludes that a plaintiff who meets an exception contained in MCL 500.3106(1)(a) to (c) that arises out of the ownership, operation, maintenance, or use of a *parked vehicle as a motor vehicle* has established an accidental bodily injury. But, because the Legislature included a causal component in MCL 500.3106(1)(b), i.e., "direct result," I see no statutory support for the proposition

---

[43] *Id*. at 635-636.

13

that a claimant must additionally establish that the injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for. At a minimum, I would limit *Putkamer* and its progeny and clarify that the third prong of *Putkamer*'s general test does not apply to injuries arising from parked vehicles under MCL 500.3106(1)(b). With that said, I believe the most prudent action at this time would be to grant plaintiff's application and, with the benefit of full briefing and argument, reexamine the operation of MCL 500.3106 and the vitality of *Putkamer*.

Brian K. Zahra
Stephen J. Markman
Kurtis T. Wilder